UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                   :

TRODALE HOLDINGS LLC,           :
              Plaintiff,      :    Civil Action No. 1:16-CV-04254-KPF
v.                           :
                                   :

BRISTOL HEALTHCARE INVESTORS L.P.,  :
ET AL.,                           :
              Defendants.     :
                                   :
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OMNIBUS
## FEDERAL RULE OF CIVIL PROCEDURE 12 MOTION

MARTIN LLP
262 Harbor Drive, 3rd Floor
Stamford, Connecticut 06902
Tel: (203) 973-5210
Fax: (203) 973-5250

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

I.   This Litigation Relates to an Asset Purchase Agreement Made in February 2014
     for the Sale and Purchase of Several Skilled Nursing Home Facilities ................ 2

II.  The APA Set a Due Dilgence Period and Closing Date that Original Defendant
     Entities Allowed Trodale to Repeatedly Extend .................................................... 2

III. Trodale Did Not Raise Any Questions About What It Allegedly Discovered in
     Due Diligence Until After It Failed to Close and the Original Defendant Entitltes
     Declared Trodale To Be In Breach and Terminated the APA .............................. 3

IV.  The Only Allegations in the SAC Regarding Jurisdiction Consists of a Reference
     to the Venue Provision of the APA ....................................................................... 6

V.   Trodale's Own Allegations Reveal The Absence Of Any Appropriate Basis For
     Finding Personal Jurisdiction ................................................................................ 7

     A.  H/P Carrington ........................................................................................... 8
     B.  H/P Cambridge ........................................................................................... 8
     C.  Legacy Healthcare and Peabody Associates ............................................. 9

VI.  The New Defendant Entities Have No Contacts with The State of New York .... 9

ARGUMENT ........................................................................................................... 10

I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NEW
     DEFENDANT ENTITIES .................................................................................... 10

     A. The Venue Provision of the APA Does Not Create a Basis for Personal
        Jurisdiction in New York Over the New Defendant Entities. ....................... 10

        1. The New Defendant Entities are Not Assignees of APA Rights ............ 11
        2. Trodale Third Party Beneficiary Theory Fails ....................................... 12
        3. Trodale's Alter-Ego Theory Fails ........................................................... 13
        4. The Closely-Related Standard Does Not Create Jurisdiction Over the
           New Defendant Entities ........................................................................ 14

B. Plaintiff Has Not Alleged A Jurisdictional Basis Against the New Defendant Entities Under New York's Long-Arm. ...................................................... 14

    1. Section 301 Does Not Apply to the New Defendant Entities................ 15

    2. Section 302 Does Not Create A Statutory Basis for Finding That Jurisdiction Exists in New York Against the New Defendant Entities .. 16

C. The New Defendant Entities Lack the Minimum Contacts with New York Necessary to Satisfy Due Process ................................................................. 16

II. PRAYERS FOR RELIEF ARE NOT VALID INDEPENDENT CAUSES OF ACTION ............................................................................................................ 17

A. "Specific Performance" is Not a Cause of Action in Its Own Right............. 17

B. The Declaratory Judgment Act Does Not Create an Independent Cause of Action ........................................................................................................... 18

C. There is No Cause of Action for "Permanent Injunction" ............................ 18

D. The Trodale Claim for Indemnification Fails................................................. 19

E. A "Vendee's Lien" is A Remedy Not a Cause of Action............................... 19

III. MR. MITTLEIDER AND THE NEW DEFENDANT ENTITIES ARE NOT PARTIES TO THE APA; THEREFORE, THEY CANNOT BE HELD LIABLE UNDER A THEORY OF BREACH OF CONTACT .......................................... 20

IV. THE CLAIM FOR BREACH OF EXPRESS WARRANTY IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND SHOULD BE DISMISSED .................................................................................................................. 20

V. THE NEW DEFENDANT ENTITIES CANNOT BE HELD LIABLE FOR "FRAUDULENT CONCEALMENT" BECAUSE THEY MADE NO REPRESENTATIONS TO TRODALE AND OWED NO DUTY TO IT .......... 21

VI. TRODALE'S CLAIM FOR "ESTOPPEL" SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OR, ALTERNATIVELY, BECAUSE IT IS BARRED BY THE INTEGRATION CLAUSE OF THE APA ......................... 22

VII. ALLEGATIONS REGARDING OTHER LAWSUITES HAVE NO BEARING ON THE ACTUAL ISSUES PRESENTED AND WOULD BE UNFAIRLY PREJUDICIAL.................................................................................................. 23

CONCLUSION............................................................................................................ 25

## TABLE OF AUTHORITIES

*Aguas Lenders Recovery Grp. LLC v. Suex, S.A.*, 585 F.3d 696 (2d Cir. 2009).......................... 12

*AI Trade Fin., Inc v. Petras Bank*, 989 F.2d 76 (2d Cir. 1993) .................................... 15

*Alaska Electrical Pension Fund v. Bank of America Corp.*, 175 F.Supp.3d 44 (S.D.N.Y. 2016) 20

*American Medical, Inc. v. Santurna Group Chartered Accountants, LLP*, 2016 U.S. Dist. LEXIS
    92387 (July 15, 2016)................................................................................ 14

*American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co., 2012 U.S. Dist.
    LEXIS 21739 (S.D.N.Y. Feb 17, 2012)* ..................................................... 11

*Burger King Corp. v. Rudzewiez*, 471 U.S. 462 (1985)............................................ 17

*Carnival Cruise Lines Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991) .................. 10

*Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417 (2d Cir. 2013) .............................. 18

*Celle v. Barclays Bank P.L.C.*, 48 AD3d 301, 851 N.Y.S.2d 500 (1st Dep't. 2008) .............. 23

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012) ......................................... 18

*Chiaramonte v. Animal Medical Center*, 2014 U.S. Dist. LEXIS 99930 (S.D.N.Y. July 22, 2014)
    ................................................................................................ 2

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)................... 15, 16

*Cuno, Inc. v. Hayward Indus. Prods*, 2005 U.S. Dist. LEXIS 8886 (S.D.N.Y. May 10, 2005)... 14

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)...................................... 10

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996).................................... 13

*Dent v. United States Tennis Association*, 2008 U.S. Dist. LEXIS 46971 (E.D.N.Y. June 17,
    2008)..................................................................................... 25

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010)...................................... 2

*Elow v. Svenningsen*, 58 AD 3d 674 (2d Dep't 2009) ............................................. 19

*Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F.Supp.2d 797 (S.D.N.Y. 2010)............ 14

*Gary Friedrich Enters., LLC v., Marvel Enters., Inc.*, 2011 U.S. Dist LEXIS 30685 (S.D.N.Y.
    Mar. 22, 2011)............................................................................ 13

*Golisano v. Twet*, 2015 U.S. Dist. LEXIS 72559 (W.D.N.Y. June 4, 2015) ................................ 19

*Gramercy Advisors, LLC v. Coe*, 2014 U.S. Dist. LEXIS 118231 (S.D.N.Y. Aug. 25, 2014) .... 11

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ......................................... 15

*HSH Norband AG v. RBS Holdings USA Inc.*, 2015 U.S. Dist. LEXIS 36087 (S.D.N.Y. Mar. 23, 2015) ............................................................................................................................................ 24

*IMG Int'l Marketing Group, Inc. v. SDS William Street, LLC*, 936 N.Y.S.2d 59, 2011 N.Y. Misc. LEXIS 4049 (June 29, 2011) ....................................................................................................... 23

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................................ 16

*Joint E. and S. Dist. Asbestos Lit.*, 14 F.3d 726 (2d Cir. 1993) .................................................... 18

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ........................................................ 15

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) .......................................... 25

*Low v. Robb*, 2012 U.S. Dist. LEXIS 6836 (S.D.N.Y. Jan. 20, 2012) ......................................... 24

*Magi XXI, Inc. v. Stato della Citta del Vatican*, 714 F.3d 714 (2d Cir. 2013) ............................ 10

*MedPay Sys., Inc. v. MedPay USA, LLC*, 2007 U.S. Dist. LEXIS 30201 (E.D.N.Y March 29, 2007) ............................................................................................................................................ 15

*Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76 (S.D.N.Y. 2003) ............................................................................................................................................ 25

*Nahabedian v. Intercloud Sys., Inc.*, 2016 U.S. Dist. LEXIS 3895 (S.D.N.Y. Jan 12, 2016) ...... 18

*Navana Logistics Ltd. v. TW Logistics, LLC*, 2016 U.S. Dist. LEXIS 21822 (S.D.N.Y. Feb. 23, 2016) ............................................................................................................................................ 20

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430 (2d Cir 1993) ....................... 17

*Overseas Ventures, LLC v. Row Management*, Ltd., 2012 U.S. Dist. LEXIS 159097 (S.D.N.Y. Oct. 26, 2012) ............................................................................................................................. 11

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) .......................................................... 11

*Piteairn Props. v. LJL 33rd St. Assocs., LLC*, 2013 U.S. Dist. LEXIS 28509 (S.D.N.Y. Feb. 21, 2013) ............................................................................................................................................ 18

*Platinum and Palladium Commodities Litigation*, 828 F.Supp.2d 588 (S.D.N.Y. 2011) ............ 25

*Queens Boulevard Associates*, 212 B.R. 451 (E.D.N.Y. 1997) .................................................. 19

*Ray v. Samsung Electronics America, Inc.*, 2016 U.S. Dist. LEXIS 79260 (June 17, 2016) ....... 18

*Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors*, 875 F.Supp.2d 287 (S.D.N.Y. 2012) ............................................................................................................................. 14

*Refco Sec. Litigation*, 2009 U.S. Dist. LEXIS 130683 (S.D.N.Y. Nov. 20, 2009) ...................... 14

*Saye v. First Specialty Ins. Co., 2015 U.S. Dist. LEXIS 50243 (E.D.N.Y April 16, 2015)* .......... 10

*Sole Resort, S.A. de CV. v. Allure Resorts, Mgmt, LLC*, 450 F.3d 100 (2d Cir. 2006) ................ 16

*Stapleton v. Pavilion Building Installation Sys., Ltd.*, 2017 U.S. Dist. LEXIS 14097 (W.D.N.Y. Feb. 1, 2017) ............................................................................................................... 20

*Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119 (2d Cir. 2005) ................ 13

*Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52 (2d Cir. 1984) ....................................... 20

*Travelers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087 (S.D.N.Y. 1989) .............. 17

*Trilegiant Corp, Inc.*, 11 F.Supp.3d 82 (D. Conn. 2014) ........................................................... 25

*Troma Entertainment, Inc., v. Centennial Pictures Inc.*, 729 F.3d 215 (2d Cir. 2013) ............... 15

*Trump International Hotel & Tower v. Carrier Corp*, 254 F. Supp.2d 302 (S.D.N.Y. 2007) ..... 21

*United States Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F.Supp.2d 605 (S.D.N.Y. 2008)  10

*Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977) ........................................................................ 18

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) .............................................. 15

## PRELIMINARY STATEMENT

Defendants respectfully submit this memorandum of law in support of their Omnibus Federal Rule of Civil Procedure 12 Motion addressed to the Second Amended Complaint ("SAC") of plaintiff Trodale Holdings LLC ("Trodale").

This motion will not dispose of all claims against all of the defendants. What it will do, however, is provide important clarity and focus to the claims Trodale alleges. To date, in addition to asserting claims against entities over whom personal jurisdiction is lacking, Trodale has presented a hodgepodge of allegations and "causes of action" that (a) fails to distinguish between defendants, (b) confuses remedies with valid causes of action, (c) asserts claims that fail as a matter of law and (d) includes numerous gratuitous and entirely immaterial and impertinent allegations to serve improper purposes. Because of the confusion created by Trodale's group pleading approach, the following definitions will be used to provide organization to this case and to distinguish between defendants who are not similarly situated:

> "Original Defendant Entities" -- Bristol Healthcare Investors L.P. ("Bristol"), Lynchburg Healthcare Investors, L.P. ("Lynchburg"), DemQuarter Healthcare Investors, L.P. ("Demquarter"), Salem Nursing & Rehabilitation Center of Reform Inc. ("Salem")

> "New Defendant Entities" -- H/P Carrington Inc. ("H/P Carrington"), Legacy Healthcare Corporation ("Legacy"), H/P Cambridge House, Inc. ("H/P Cambridge") and Franklin Healthcare of Peabody LLC d/b/a Peabody Associates ("Franklin")[1]

Once the motion is decided, this case will be properly positioned for discovery on the key issues of factual dispute and for an efficient resolution of the remaining genuine legal issues.

---

[1] Trodale originally included Lafayette Lifeplans of Hiawatha, Inc. ("Lafayette") as a defendant in the SAC. On February 17, 2017, Trodale's counsel requested that the Court discontinue the claims against Lafayette without prejudice, which the Court so ordered that day. Of course, the Stipulation that the parties executed pursuant to Fed.R.Civ.Pro. 41(a)(1)(A)(ii) did not require Court approval and it is telling of the apparent lack of confidence Trodale has in its own case that it delivered the Stipulation with a cover letter making unnecessary, inaccurate and gratuitous statements to the Court; such statements reveal the disturbing lack of investigation made by Trodale before it filed the SAC. The Court should challenge Trodale to identify where in the APA it finds the alleged representations that are described in the February 17 letter.

## STATEMENT OF FACTS[2]

### I. This Litigation Relates to an Asset Purchase Agreement Made in February 2014 for the Sale and Purchase of Several Skilled Nursing Home Facilities

This litigation relates to an Asset Purchase Agreement made between (a) Trodale and (b) Bristol, Lynchburg, Demquarter and Salem that is dated as of February 6, 2014 ("the APA").[3] The parties were represented by counsel with respect to the negotiation and drafting of the APA which, in essence, provided detailed terms and conditions for the sale of four (4) skilled nursing home facilities to Trodale for a total purchase price of $30.6 million.  APA §2.  In addition, the APA provided Trodale with a purchase option for five (5) additional facilities.  APA §16.  The New Defendant Entities had interests in the "option" facilities but they are not parties to the APA.  None of the facilities identified in the APA is located in New York.

### II. The APA Set a Due Diligence Period and Closing Date that Original Defendant Entities Allowed Trodale to Repeatedly Extend

As is typical with transactions of this nature, the APA gave Trodale a negotiated period of time to conduct whatever reasonable due diligence it wanted of the operations and financial conditions of the subject facilities ("the Due Diligence Period").  The Due Diligence Period set by the APA was 75 days (*i.e.*, until April 22, 2014); the parties set the Closing Date of June 1, 2014.  APA §§ 3 and 4(a).

At Trodale's request, the Original Defendant Entities extended the Due Diligence Period and the Closing Date deadline numerous times.  In fact, the APA parties made *over 150 amendments* to it, which primarily gave Trodale more time – nearly two years -- to investigate

---

[2] Defendants include some of the information set forth herein for information purposes and context even though it is not necessary to find such facts to decide the issues presented by this motion.

[3] A copy of the APA is attached to the SAC.  It is well-established that the Court may consider documents attached to the complaint as exhibits when deciding a Rule 12(b)(6) motion to dismiss. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) *cited by Chiaramonte v. Animal Medical Center*, 2014 U.S. Dist. LEXIS 99930, *5 (S.D.N.Y. July 22, 2014).

the subject assets.[4]   The New Defendant Entities were not parties to any APA amendment. Declaration of Douglas K. Mittleider dated March 9, 2017 ("Mittleider Decl.") ¶4.   The allowed extensions were usually for fairly short periods because the Original Defendant Entities wanted Trodale to be active, rather than complacent, in its efforts to do whatever it needed to proceed to a closing.   Mittleider Decl. ¶7.   Virtually all of the extension requests were made (and the amendments prepared) by Trodale on the grounds and on its explicit representation that it needed the additional time to arrange its financing and to contract with tenants who would operate The Cambridge House (Bristol, TN), The Stratford House (Chattanooga, TN) and the Carrington (Lynchburg, VA) facilities on its behalf.   Mittleider Decl. ¶7.

The only facility for which Trodale made an earnest money deposit, and thus the only one for which it had any rights prior to its breach, was The Cambridge House.   Mittleider Decl. ¶8.[5]   Not only did Trodale do such things during the Due Diligence Period as tour the facilities, review books and records and observe day-to-day operations and management but, in mid-2015, it even installed its own representative at The Cambridge House for several months; that representative was involved in leadership, daily operations and capital expenditures at the facility.   Mittleider Decl. ¶8.

### III.   Trodale Did Not Raise Any Questions About What It Allegedly Discovered in Due Diligence Until After It Failed to Close and the Original Defendant Entities Declared Trodale to be in Breach and Terminated the APA

If Trodale had been at all dissatisfied with what it learned during due diligence, the APA provided it with a ready and simple solution:

---

[4] The Amendments also specifically authorized the sale of one of the option facilities -- a fact that belies the specific allegation Trodale makes at SAC ¶103.

[5] It is disturbing that Trodale has used the fact that it makes allegations in the SAC about properties as to which it did not put a single dollar into escrow to record *lis pendens* **without posting any bond** to protect its owner from the considerable damages associated with the cloud on title.   The original Complaint Trodale filed was verified by its counsel rather than its principal.

> This Agreement shall be subject to the condition that Purchaser shall be reasonably satisfied with the physical and environmental condition of the Property and all improvements thereon, as well as the financial condition and operations of the Nursing Home Facilities by the end of the Due Diligence Period. *If Purchaser shall not be so satisfied and Purchaser notifies Seller thereof in writing on or prior to the end of the Due Diligence Period, this contract shall be null and void and the Title Company shall refund the Deposit plus any accrued interest to the Purchaser.*

APA § 4(a)(emphasis added). Trodale never provided a Paragraph 4(a) Notice. Mittleider Decl. ¶9. The last extension the Original Defendant Entities allowed was until April 12, 2016. Mittleider Decl. ¶10. When Trodale finally acknowledged, in April 2016, that it had exhausted all of its options for finding a tenant with whom it could make an acceptable agreement, the Original Defendant Entities realized there was no point in allowing Trodale to continue its charade and they refused to allow a further extension of the Due Diligence Period and the Closing Date. Mittleider Decl. ¶10. Trodale did not close on any of the transactions contemplated by the APA within the time provided to it but instead defaulted on its obligations. Mittleider Decl. ¶11. At no time did Trodale commit to a Closing, deposit any earnest monies except with respect to Cambridge to conclude due diligence, tender the purchase price or otherwise indicate a desire to close. Mittleider Decl. ¶11.

Despite its unfettered opportunity to investigate all matters related to the Original Defendants Entities and their facilities, Trodale did not indicate that it had any concerns. Mittleider Decl. ¶12. No information was concealed from Trodale. Mittleider Decl. ¶12. The parties did not make any extension of the period for due diligence and closing to afford the Original Defendant Entities an opportunity to address what Trodale now claims it learned. Mittleider Decl. ¶12. What Trodale may have thought as a result of its due diligence efforts had nothing to do with what it indicated was its failure and inability to secure a tenant and, in fact, it

4

was only after the final extension expired that Trodale indicated for the very first time its belief that the Original Defendant Entities had defaulted under the APA. Mittleider Decl. ¶13. The Original Defendant Entities responded by noting that the APA had already terminated, prior to the purported Trodale Notice of Default, due to Trodale's failure to close. Mittleider Decl. ¶13. In a textbook case of using an aggressive offense as a form of defense, this litigation followed shortly thereafter.

Pursuant to its clear terms, Trodale forfeited any rights to the escrowed funds to Bristol (the owner of Cambridge – the only facility for which any deposit was made) when the Original Defendant Entities terminated the APA due to Trodale's failure to close; the escrow monies should have been paid over to them:

> If … Purchaser shall fail to deliver the Purchase Price as required hereunder … or otherwise fail to consummate the transactions contemplated herein, then Seller shall have the right to declare this Agreement terminated by written notice to Purchaser, in which case the Deposit plus any accrued interest shall be forwarded to Seller by the Title Company as liquidated damages and as Seller's sole remedy hereunder (it being agreed by the parties that Seller's damages for negotiating and entering into this Agreement are difficult to determine, and that the amount of the Deposit represents a fair and reasonable estimate of those damages); provided, however, unless otherwise provided in this Agreement, nothing in this Section 12(b) shall prevent Seller from making a claim for indemnification in accordance with Section 11 above. If Seller terminates this Agreement pursuant to this Section 12(b), Purchaser will cooperate with Seller to cause the release of the Deposit to Seller, including by executing and delivering a joint written instruction to the Title Company to that effect.

APA § 12(b). The idea that Trodale somehow has rights in any of the properties after it spent two (2) years promising to close without acting on that promise finds no support in the contract the parties made. The APA is clear that no rights accrued to the benefit of Trodale until after the end of the Due Diligence Period and its deposit of earnest money with the escrow agent. As

noted above, the only deposit Trodale made was in respect of The Cambridge House.  Trodale ended the Due Diligence Period with respect to the Cambridge House in mid-2014 and its deposit became "hard" or nonrefundable, subject to closing conditions (which the Original Defendant Entities would have been able to satisfy) at that point.  Mittleider Decl. ¶14.  The SAC is full of sound and fury about information that was supposedly fraudulently concealed but a close examination reveals the lack of substance and merit to the claims.  Repeating baseless accusations is not an adequate substitute for a proper pleading.

**IV.    The Only Allegations in the SAC Regarding Jurisdiction Consists of a Reference to the Venue Provision of the APA**

Trodale did not bring the New Defendant Entities into this case until it filed the SAC.  While specific allegations are made about their respective citizenship for the apparent purpose of demonstrating the Court's subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), Trodale fails to allege a proper ground for the exercise of personal jurisdiction over the New Defendant Entities.  According to the SAC, the only connection the New Defendant Entities have to this matter is their connection to the various facilities and real property that are subjects of the APA "option".  The only jurisdictional basis in the SAC for dragging the New Defendant Entities into a New York court is stated with an allegation that Trodale knows is patently false.  The effort to include the New Defendant Entities in this case seems designed solely to harass and distract from the actual issues presented.

As Trodale alleges, each of the New Defendant Entities is a foreign company that has its principal place of business outside of New York and none is a New York citizen.  SAC ¶¶ 15-25.  With a "clever" pleading sleight of hand, Trodale includes the New Defendant Entities within its defined term "Nursing Home Entities" in paragraph 1 of the SAC.  Trodale later uses the artificially-defined term it created to allege that "[o]n or about February 6, 2014, within the

6

Southern District of New York, plaintiff Trodale entered into an asset purchase agreement ("the APA") with the Nursing Home Entities."  SAC ¶29.  An examination of the APA plainly reveals the fact that none of the New Defendant Entities was a party to it and none owed any obligations (or received any benefits) thereunder.  What is worse about Trodale's disingenuous approach is that the term "Nursing Home Facilities *is* defined in the SAC, as is the term "Sellers", and they are defined to mean ***only*** the Original Defendant Entities -- and do not include the New Defendant Entities or the option properties.  *See* APA Preamble, §1(a) and Exhibits A and K.

The venue provision of the APA provides, in relevant part:

> ANY DISPUTE MAY BE BROUGHT BEFORE ANY COURT HAVING SITUS IN NEW YORK COUNTY, NEW YORK. EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS LOCATED WITHIN SAID COUNTY AND STATE.

That provision is binding on the Original Defendant Entities.  While Mr. Mittleider executed the APA, he did so only in a representative capacity on behalf of the Original Defendant Entities.

## V.     Trodale's Own Allegations Reveal the Absence of Any Appropriate Basis for Finding Personal Jurisdiction

Trodale pleads no legal theory or set of facts that would make the venue provision applicable to persons who are not parties to the APA.[6]  Faced with the problem created by its own pleading tactic, during the pre-motion conference, Trodale argued with broad brush strokes -- but no analysis or authority -- that relationships the New Defendant Entities have with Mr. Mittleider create jurisdiction.  Even though the SAC does not sufficiently allege the nature (or in some instances even the existence) of such relationships, for the sake of efficiency and to avoid the further delay that would necessarily result from forcing Trodale to file a Third Amended

---

[6]  In paragraphs 3 and 7 of the SAC, Trodale makes reference to "the relevant agreements" but does not identify any agreement other than the APA in the SAC; the New Defendant Entities assume that the reference to "agreements" is attributable to loose drafting and does not refer to some contract(s) other than the APA.

Complaint making the same allegations Trodale's counsel raised during the conference, the New Defendant Entities will address the orally-expressed arguments. Because Trodale's arguments lack merit, leave to re-plead against the New Defendant Entities should not be granted.

Each allegation Trodale makes about the New Defendant Entities is made "on information and belief" without any indication as to what information or belief serves as the supposed basis. For purposes of a Rule 12(b)(2) motion, the Court is not obliged to deem Trodale's allegations to be true. Many are not.

### A. H/P Carrington

Notwithstanding Trodale's effort to engage in group pleading, each defendant is entitled to have its connection to New York individually evaluated. H/P Carrington is alleged to be the operator of a skilled nursing home and the holder of an option to purchase the Virginia real property on which the facility sits. SAC ¶¶15-16. That option, which did exist when the APA was made, expired before Trodale filed the SAC. Like the other New Defendant Entities, H//P Carrington is not alleged by Trodale to have breached a contract or committed a tort and, since the option right expired, there is no form of relief that Trodale could secure against it that would mean a thing or affect any rights it may believe it has.

### B. H/P Cambridge

H/P Cambridge is a Georgia corporation that operated the Cambridge skilled nursing facility in Bristol Tennessee. SAC ¶¶17-18. Inasmuch as the claimed "interest" that H/P Cambridge is alleged to have is not an ownership one, there are no assets it has that are subject to the APA. Thus, any relationship it has to Mr. Mittleider or any of the other defendants exists outside of New York and is irrelevant to the issue of personal jurisdiction in this District.

### C. Legacy Healthcare and Peabody Associates

According to Trodale, Legacy is or was a Tennessee corporation with a principal place of business in Georgia that dissolved over six years ago but still owns the Riverwood facility (and associated real property) in Madisonville, Texas. SAC ¶¶19-21. Franklin is alleged to be a Georgia corporation that owns the Westview Manor of Peabody facility and/or its real estate (Peabody, Kansas). SAC ¶¶22-23. What Trodale claims about Legacy and Franklin is that they own an interest in assets in Texas and Kansas, respectively. While it is a somewhat inapt analogy inasmuch as the representations the Original Defendant Entities made in the APA were not false, following the logic of Trodale's theory would mean that jurisdiction would be valid in New York over the true owner of the Golden Gate Bridge simply because someone made an agreement for an option for its sale to a New York purchaser – it is illogical to think that the naming of out-of-state assets in a purchase agreement to which the owner is not a party creates jurisdiction over such owner.

### VI.   The New Defendant Entities Have No Contacts With the State of New York

None of the New Defendant Entities has any systematic or continuous contacts, substantial or otherwise, with the State of New York. Mittleider Decl. at ¶15. None own or rent property, have any presence, conduct any business operations in, direct any advertising to, or derive any revenue from the State of New York. Mittleider Decl. at ¶15. The New Defendant Entities do not own or rent any property, real or personal, in the State of New York. Mittleider Decl. at ¶15. They do not have any employees in the State of New York. Mittleider Decl. at ¶15. The New Defendant Entities do not have any offices, statutory agents, telephone listings or mailing addresses in the State of New York nor do they have any bank accounts, licenses or operations in the State of New York. Mittleider Decl. at ¶15.

**ARGUMENT**

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE NEW DEFENDANT ENTITIES

### A.   The Venue Provision of the APA Does Not Create a Basis for Personal Jurisdiction in New York Over the New Defendant Entities

In its pre-motion letter to the Court, Trodale argued that the New Defendant Entities were bound by the venue provision of the APA even though they were not signatories to it because they are related to Mr. Mittleider.[7]

A forum selection provision can provide a basis for personal jurisdiction because it indicates an affirmative and voluntary consent to the exercise of jurisdiction in the designated forum and a waiver of any basis for disputing jurisdiction. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *Saye v. First Specialty Ins. Co., 2015* U.S. Dist. LEXIS 50243, *12 (E.D.N.Y April 16, 2015); *United States Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F.Supp.2d 605, 615 (S.D.N.Y. 2008).  Such contract provisions are considered beneficial and entitled to enforcement because they have the "salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding these motions."  *Carnival Cruise Lines Inc. v. Shute*, 499 U.S. 585, 593-94, 111 S.Ct. 1522 (1991).  Thus, if the forum selection clause is deemed valid, it is not necessary to examine the long-arm statute or the Constitutional due

---

[7] At the February 2, 2017 pre-motion conference, Trodale's counsel acknowledged that his citation to *Magi XXI, Inc. v. Stato della Citta del Vatican*, 714 F.3d 714, 723 (2d Cir. 20013) for the proposition that "We hold that a non-signatory to a contract containing a forum election clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory" is inapposite to this case.  In that case, the Second Circuit held that a non-signatory may enforce a forum selection clause against a signatory while specifically indicating that "we do not reach the question of when a signatory may enforce a forum selection clause against a non-signatory.  *Magi XXI, 714 F.3d at 722.*

process requirements. *American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co.,* 2012 U.S. Dist. LEXIS 21739, *7 (S.D.N.Y. Feb 17, 2012).

A four-part test has been used in this Circuit to analyze whether a forum selection clause is valid for motion to dismiss purposes: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause was mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If <u>all</u> of those conditions exist, the Court then considers whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overarching. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007); *Overseas Ventures, LLC v. Row Management*, Ltd., 2012 U.S. Dist. LEXIS 159097, *11-12 (S.D.N.Y. Oct. 26, 2012).

Because of the APA forum selection provision, even though it is permissive rather than mandatory,[8] the Original Defendant Entities do not contest jurisdiction in this District and that is the reason they are not movants on this defense. *Gramercy Advisors, LLC v. Coe*, 2014 U.S. Dist. LEXIS 118231, *7 (S.D.N.Y. Aug. 25, 2014)("A valid and enforceable forum selection clause confers personal jurisdiction consistent with New York's long-arm and constitutional due process requirements."). However, since the New Defendant Entities did not sign the APA, that same indication of affirmative and voluntary consent does not exist as to them.

### 1.   The New Defendant Entities Are Not Assignees of APA Rights

In some situations, courts have subjected a non-signatory to an agreement to a forum selection provision contained therein. *Aguas Lenders Recovery Grp. LLC v. Suex, S.A.*, 585 F.3d

---

[8] The fact that the clause is permissive establishes the falsity of the allegation Trodale makes in paragraph 120 of the SAC, that the Texas and Virginia actions were filed in violation of the APA.

696, 701 (2d Cir. 2009)(making analysis for forum non conveniens purposes; no question existed about personal jurisdiction). In particular, the Second Circuit held in *Aguas Lenders* that a non-signatory that is a successor in interest to a party to the subject agreement is bound to the same extent as one of its signatories. The logic of that conclusion is clear: "a forum selection clause is integral to the obligations of the overall contract, and a successor in interest should no more be able to evade it than any other obligation under the agreement*." Aguas Lenders*, 585 F.3d at 701 ("Successorship doctrine prevents parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations."). This line of cases and rationale is inapplicable to this case inasmuch as Trodale has not alleged, and cannot allege in good faith, that any of the New Defendant Entities is a successor to any of the Original Defendant Entities or that any of the Original Defendant Entities assigned any of their APA rights to the New Defendant Entities. Each entity is associated with a different property.

## 2. **Trodale's Third Party Beneficiary Theory Fails**

At the pre-motion conference, Trodale's counsel intimated that the New Defendant Entities are bound by the APA pursuant to a "third party beneficiary" theory. February 2, 2017 Tr. at 5-6. The obvious problem with that argument is that the New Defendant Entities are not mentioned as beneficiaries, either directly or indirectly, in the APA. Indeed, if Trodale's SAC allegations are to be believed, Trodale did not know of the existence of the New Defendant Entities when it entered into the APA and would not have known to indicate them as third-party beneficiaries. The New Defendant Entities have no right to bring an action to enforce any of the terms of the APA. The theory of third-party beneficiary contract principles allows such intended beneficiaries the right to sue; it does not create a cause of action against such persons. *See*

*generally Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).

### 3.  **Trodale's Alter-Ego Theory Fails**

While not well-articulated in the SAC, the New Defendant Entities infer that the references to Mr. Mittleider are intended to suggest that they are somehow liable under some sort of alter-ego theory.  In the first instance, the notion is flawed because Mr. Mittleider did not personally undertake any of the contract obligations contained within the APA.  Mr. Mittleider has not contested personal jurisdiction and there is no allegation that the New Defendant Entities are alter-egos of the Original Defendant Entities – a proposition that makes no sense given the different properties, in different states, mentioned in the APA.  Moreover, the SAC contains no allegations of such things as a transfer of assets among all of the defendants without regard for their respective legal status, let alone allegations that the abuse of the corporate form was used in respect of the New Defendant Entities to commit wrong, fraud or the breach of a legal duty, or a dishonest and unjust act.[9]  "[D]ismissal of an alter ego claim at the pleading stage is appropriate where 'the pleadings are devoid of any specific facts or circumstances supporting' the assertion of alter ego liability."  *Gary Friedrich Enters., LLC v., Marvel Enters., Inc.*, , 2011 U.S. Dist LEXIS 30685, *6 (S.D.N.Y. Mar. 22, 2011) *quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).  Trodale's inability to make allegations that are both consistent with the obligations of Rule 11 and indicate a basis under the principles of alter-ego liability preclude application of the forum selection provision against the New Defendant Entities.

---

[9]  Trodale's use of allegations about other lawsuits involving Mr. Mittleider is addressed *infra* at pp 23-25.

### 4. The Closely-Related Standard Does Not Create Jurisdiction Over the New Defendant Entities

Some cases in this District have held that a forum selection clause can be enforced against a non-signatory under a "closely related" standard. *Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F.Supp.2d 797, 799 (S.D.N.Y. 2010). A non-signatory is deemed "closely related" to a dispute if its interests are "completely derivative" of and "directly related to, if not predicated upon the signatory party's interests or conduct." *Cuno, Inc. v. Hayward Indus. Prods*, 2005 U.S. Dist. LEXIS 8886, *17 (S.D.N.Y. May 10, 2005). What distinguishes this case from cases where the test has been deemed satisfied is that there are no allegations to the effect that the parties' business operations were essentially intertwined or that the non-signatory was otherwise involved in the transaction in some manner. *American Medical, Inc. v. Santurna Group Chartered Accountants, LLP*, 2016 U.S. District LEXIS 92387, *11 (July 15, 2016); *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors*, 875 F.Supp.2d 287, 307-08 (S.D.N.Y. 2012); *In re Refco Sec. Litigation*, 2009 U.S. Dist. LEXIS 130683, *40 (S.D.N.Y. Nov. 20, 2009) *recommendation adopted* 2010 U.S. Dist. LEXIS 5832 (S.D.N.Y. Jan. 20, 2010). The New Defendant Entities' claimed ownership rights to the skilled nursing homes are not in any way predicated on either the APA or the Original Defendant Entities and they did not affirmatively do anything to participate in the transaction.

### B. Plaintiff Has Not Alleged a Jurisdictional Basis Against the New Defendant Entities Under New York's Long-Arm

Inasmuch as the forum selection provision of the APA does not supply jurisdiction over the New Defendant Entities, the Court must consider the traditional questions of: (1) whether there is jurisdiction over the defendant under the law of the forum state and (2) whether the exercise of jurisdiction comports with federal due process requirements. *See e.g. Chloe v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). New York's long-arm statute is set forth at New York Civil Practice Law §§301 and 302. Trodale bears the burden of demonstrating that jurisdiction is proper. *Troma Entertainment, Inc., v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013).

### 1. Section 301 Does Not Apply to the New Defendant Entities

To obtain general jurisdiction under Section 301, the New Defendant Entities must have been "doing business" on a continuous, permanent, and substantial basis in New York at the time the action was brought. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (factors for "doing business" include the existence of an office, employees, bank accounts, or property or the solicitation of business in the forum state); *MedPay Sys., Inc. v. MedPay USA, LLC*, 2007 U.S. Dist. LEXIS 30201, *16 (E.D.N.Y March 29, 2007) (where defendant "neither owns property nor maintains an office in New York…[nor possesses] a New York telephone number…[nor has] employees or agents located in the state[,]" §301 jurisdiction does not exist). Trodale does not allege that any of the New Defendant Entities has done any business in New York, let alone business on a continuous, permanent, and substantial basis. The Declaration supplied by Mr. Mittleider reveals that no such allegation could be made in good faith. *AI Trade Fin., Inc. v. Petras Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (affidavits may be used in the determination of personal jurisdiction).

2.   **Section 302 Does Not Create A Statutory Basis for Finding That Jurisdiction Exists in New York Against the New Defendant Entities**

Jurisdiction over the New Defendant Entities does not exist pursuant to CPLR 302(a)(i), which confers jurisdiction if the defendant transacted business within the state and that the claim asserted in the action arose from such business activity. *Sole Resort, S.A. de CV. v. Allure Resorts, Mgmt, LLC*, 450 F.3d 100, 103 (2d Cir. 2006). As set forth above, the New Defendant Entities have transacted no business in New York and the claims that are asserted, to the extent any claims are actually asserted against them, relate to property located in other states.

CPLR 302(a)(2) provides jurisdiction over a defendant who commits a tortious act within New York. The Trodale Complaint does not allege that the New Defendant Entities committed any tortious acts, let alone tortious acts in New York. For that reason, CPLR 302(a)(3) does not give Trodale an available statutory basis for claiming that jurisdiction exists over the New Defendant Entities.

Because the New Defendant Entities do not own, use or possess any New York real property -- and Trodale has not alleged otherwise -- Section 302(a)(4) is inapplicable.

C.   **The New Defendant Entities Lack the Minimum Contacts With New York Necessary to Satisfy Due Process**

Even if Trodale were to somehow convince the Court that the New York's long-arm requirements were met, it cannot demonstrate the existence of sufficient contacts between the New Defendant Entities and New York to meet the requirements of due process. *Chloe*, 616 F.3d at 164. Simply put, the New Defendant Entities did nothing to avail themselves of the benefits of the State of New York. It is axiomatic that the exercise of jurisdiction must be reasonable and not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Trodale is unable to establish that any of the

16

New Defendant Entities purposefully directed any activities toward New York through the conduct of business or by the commission of an act that would have direct and foreseeable effects in New York. *Burger King Corp. v. Rudzewiez*, 471 U.S. 462, 475-76 (1985). An exercise of jurisdiction over the New Defendant Entities in this case would not be reasonable under the circumstances, and would violate their well-established due process rights.

## II.   PRAYERS FOR RELIEF ARE NOT VALID INDEPENDENT CAUSES OF ACTION

One of the ways Trodale complicates the SAC is by confusing prayers for relief with causes of action. In particular, the First, Fourth, Sixth, Seventh, Eighth and Ninth Causes of Action of the SAC should be dismissed on the grounds that they indicate various forms of remedy Trodale believes it is entitled to obtain but do not represent valid independent causes of action. Such remedies are only available if Trodale were first successful in establishing the existence of a substantive legal right. Removing these "claims" at this early stage of the case will ensure greater efficiency as the case is readied for trial and tried.

### A.   "Specific Performance" is Not a Cause of Action in Its Own Right

Trodale's first claim for relief in the SAC is for "specific performance." A party is entitled to obtain the remedy of specific performance as a discretionary exercise of the Court's equitable authority if a plaintiff establishes that: (1) a valid contract exists between the parties; (2) plaintiff has substantially performed under the contract and is willing and able to perform its obligation; (3) the defendant breached the contract; and (4) plaintiff has no adequate remedy at law. *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir 1993). In its pre-motion letter to the Court, Trodale cited *Travelers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1104 (S.D.N.Y. 1989), as a case reciting the elements of a specific performance claim. It does not. What the *Travelers* case does is indicate when specific performance of a

17

contract is appropriate <u>after</u> a plaintiff "has succeeded on the merits of the contractual claim." It is not a separate claim but is instead a form of remedy only. The first claim of the SAC should be dismissed.

### B.   The Declaratory Judgment Act Does Not Create an Independent Cause of Action

In its Fourth and Ninth Causes of Action, Trodale asserts claims of "Declaratory Judgment." These purported causes of action fail because "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re: Joint E. and S. Dist. Asbestos Lit.*, 14 F.3d 726, 731 (2d Cir. 1993). It is well established that the Declaratory Judgment Act, 28 U.S.C. §2201 "is procedural only and does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). In other words, a judicial declaration that a particular right exists is a remedy that is only available if a plaintiff is entitled to relief on the basis of substantive law. *Ray v. Samsung Electronics America, Inc.*, 2016 U.S. Dist. LEXIS 79260, *26 (June 17, 2016) *citing Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 438 (2d Cir. 2013)(in general, an "equitable remedy" does not constitute an "independent cause of action and *Williams v. Walsh*, 558 F.2d 667, 671 (2d Cir. 1977). Therefore, the Fourth and Ninth Causes of Action should be dismissed.

### C.   There is No Cause of Action for "Permanent Injunction"

Trodale's Sixth Cause of Action, titled "Permanent Injunction" likewise should be dismissed. "It is well established that an injunction is a remedy, not a cause of action, and therefore can issue only on the basis of an independent claim for relief." *Nahabedian v. Intercloud Sys., Inc.*, 2016 U.S. Dist. LEXIS 3895, *16 (S.D.N.Y. Jan 12, 2016) *quoting Piteairn Props. v. LJL 33rd St. Assocs., LLC*, 2013 U.S. Dist. LEXIS 28509, *2 n. 1 (S.D.N.Y. Feb. 21, 2013); *Ray*, 2016 U.S. Dist LEXIS at *26. The citation Trodale makes in its pre-motion letter to

*Elow v. Svenningsen*, 58 AD 3d 674, 675 (2d Dep't 2009) is inapposite to the stated proposition that there exists a cause of action in New York for permanent injunction inasmuch as the actual issue in that case was whether the defendant had obstructed a valid easement, *i.e.*, whether there had been a violation of a property right. The remedy the plaintiff sought for that violation was a permanent injunction.

### D.   The Trodale Claim for Indemnification Fails

In its Seventh Cause of Action of the SAC, Trodale purports to assert a claim for "Indemnification." In support of that claim, Trodale recites provisions of the APA that it believes create an entitlement to the remedy of indemnification. To the extent that right does exist, it is solely as a contract right. Accordingly, the claim is duplicative of the contract claim Trodale attempts to plead is in its Second Cause of Action. Any reliance Trodale may place on *Golisano v. Twet*, 2015 U.S. Dist. LEXIS 72559, *1 (W.D.N.Y. June 4, 2015), as it did in its pre-motion conference, is misplaced. That case simply involved the enforcement of a loan guarantee and the availability of indemnification pursuant to corporate by-laws (a contract right). The claim for indemnification set forth in the Seventh Cause of Action should be dismissed.

### E.   A "Vendee's Lien" is a Remedy Not a Cause of Action

Trodale believes it is an entitled to obtain a vendee's lien in respect of the limited deposit money it provided to the escrow agent -- which was done only in respect of The Cambridge House facility. Once again, a vendee lien is a remedy that provides a form of relief in the event the vendor establishes an entitlement due to violation of substantive principles (like a contract). It is not a cause of action and there is nothing in the case Trodale cited, *In re: 85-02 Queens Boulevard Associates*, 212 B.R. 451 (E.D.N.Y. 1997) that remotely suggests otherwise.

**III. MR. MITTLEIDER AND THE NEW DEFENDANT ENTITIES ARE NOT A PARTIES TO THE APA; THEREFORE, THEY CANNOT BE HELD LIABLE UNDER A THEORY OF BREACH OF CONTRACT**

Because of the sloppy nature of the way Trodale drafted the SAC, it purports to assert all of its claims against all of the defendants. Using the deceptive tactic of defining the term "Nursing Home Entities" to include the New Defendant Entities, Trodale falsely alleges that all of the corporate defendants were parties to the APA. Trodale also makes the mistake of implicitly including Mr. Mittleider in its breach of contract claim (Second Cause of Action). There is no allegation, nor could there be a good faith allegation, that Mr. Mittleider, who signed the APA in a representative and not individual capacity, or the New Defendant Entities is a party to the APA.

It is axiomatic that only parties to a contract can be liable for its breach under New York law. *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984)("[A]bsent a contractual relationship there can be no contractual remedy.") *quoted in Stapleton v. Pavilion Building Installation Sys., Ltd.*, 2017 U.S. Dist. LEXIS 14097, *6 (W.D.N.Y. Feb. 1, 2017); *Alaska Electrical Pension Fund v. Bank of America Corp.*, 175 F.Supp.3d 44, 61 (S.D.N.Y. 2016)("It is clear that the law requires an agreement between the parties for a defendant to be liable for a breach of contract."); *Navana Logistics Ltd. v. TW Logistics, LLC*, 2016 U.S. Dist. LEXIS 21822, *13 (S.D.N.Y. Feb. 23, 2016)("Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties."). Trodale has overreached. The breach of contract claim must be dismissed against Mr. Mittleider (and the New Defendant Entities).

**IV. THE CLAIM FOR BREACH OF EXPRESS WARRANTY IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND SHOULD BE DISMISSED**

The Third Cause of Action of the SAC plead by Trodale is for "Breach of Express

Warranty." The specific "warranties" that it recites to support the claim all are alleged to be contained in the APA. There is no difference between that supposed breach and the breach asserted in the Second Cause of Action. The only case Trodale cited in its pre-motion conference for the proposition that the claim is distinct is *Trump International Hotel & Tower v. Carrier Corp*, 254 F. Supp.2d 302 (S.D.N.Y. 2007). The problem with that citation is that the case involved the servicing of air-conditioning equipment pursuant to a contract that included a warranty of workmanship and a limitation of liability provision. Because of the limitation of liability provision, there was the possibility of different remedies. No such difference exists here. Trodale does not plead an alternative theory of liability. Further, since neither Mr. Mittleider nor the New Defendant Entities were parties to the APA, they did not make any warranties and cannot be held liable for their alleged breach.

## V.   THE NEW DEFENDANT ENTITIES CANNOT BE HELD LIABLE FOR "FRAUDULENT CONCEALMENT" BECAUSE THEY MADE NO REPRESENTATIONS TO TRODALE AND OWED NO DUTY TO IT

Trodale's Fifth Cause of Action is for "Fraudulent Concealment." The problem Trodale has with that claim, in respect of the New Defendant Entities, is that they did not make any representations and did not owe any duties to Trodale. There were no communications between Trodale and the New Defendant Entities. Indeed, a review of the APA reveals that there were no representations regarding any of the properties associated with the New Defendant Entities. The representations even arguably made in the APA related to each "Nursing Home Facility" or "Property." The term Nursing Home Facility is defined as the facilities listed on APA Exhibit A-1 – which does not include the option properties. The term "Properties" is tied to the definition of Nursing Home Facilities. APA ¶1(a). The term "Sellers" is defined by reference to APA Exhibit K, which does not include the New Defendant Entities.

The <u>only</u> reference in the APA to the properties of the New Defendant Entities is at Paragraph 16, titled "Option."  In relevant part, that paragraph conferred to Trodale "the option to purchase at any time during the period of two (2) years from the Closing Date" the additional facilities listed on Exhibit J.  Significantly, there are no representations or warranties of any defendant set forth in Paragraph 16 regarding the option facilities.  Rather, the provision recites a specific contemplation that if Trodale exercised its option, which it did not do,[10] the parties would make a new and separate asset purchase agreement "consistent with the terms of this agreement."  Any representations and warranties related to the option properties would have been made in that to-be-made, yet never made, agreement.

Since the New Defendant Entities did not make any statements, let alone representations or warranties, to Trodale and no statements, representations or warranties were made regarding their facilities, no claim for fraudulent concealment can be made against them. The Fifth Cause of Action must be dismissed as to the New Defendant Entities.

## VI.   <u>TRODALE'S CLAIM FOR "ESTOPPEL" SHOULD BE DISMISSED BECAUSE IT IS DUPLICATIVE OR, ALTERNATIVELY, BECAUSE IT IS BARRED BY THE INTEGRATION CLAUSE OF THE APA</u>

Since the SAC does not identify the nature of its "Estoppel" claim, it seems only to assert as its Tenth Cause of Action a recitation of the same allegations that form the basis for the breach of contract and fraud claims.  In particular, what Trodale alleges is a reliance on the representations and promises that caused it to enter into the APA and thereafter engage in due diligence activities.

To the extent the representations and promises are the ones contained in the APA, the notion that such representations are false forms the predicate of the fraud and breach of contract

---

[10]  Trodale did not actually acquire any option rights since there was no closing and the option existed only for the two-year period <u>from</u> the Closing Date.

causes of action.  Under New York law, the claim must be dismissed inasmuch as a promissory

estoppel claim will not succeed in the absence of a duty independent of the agreement where it is

merely duplicative of the breach of contract claim.  *IMG Int'l Marketing Group, Inc. v. SDS*

*William Street, LLC*, 936 N.Y.S.2d 59, 2011 N.Y. Misc. LEXIS 4049, *11 (June 29, 2011); *Celle*

*v. Barclays Bank P.L.C.*, 48 AD3d 301, 303, 851 N.Y.S.2d 500 (1st Dep't. 2008).

   To the extent Trodale wants to base its claim on some other representation or promise

not contained in the APA, the integration clause of the agreement precludes it from doing so:

> Entire Agreement.  This Agreement, together with all exhibits and
> schedules attached hereto and any other agreements referred to
> herein, constitutes the entire understanding between the parties
> with respect to the subject matter hereof, superseding all
> negotiations, prior discussions and preliminary agreements.

APA ¶20(a).

   What Trodale appears to be pleading is the notion that the defendants should not be

permitted to cancel the APA or otherwise not perform the act of selling the various properties.  If

that purpose is the reason for the "claim," it is another instance of Trodale confusing a remedy

with a cause of action.  The Estoppel claim should be dismissed.

## VII. ALLEGATIONS REGARDING OTHER LAWSUITS HAVE NO BEARING ON THE ACTUAL ISSUES PRESENTED AND WOULD BE UNFAIRLY PREJUDICIAL

   Trodale makes a number of allegations in Paragraph 1 and in a section of the SAC titled

"Mittleider Litigation" (SAC ¶¶48-101) that, in general terms, describe other lawsuits involving

Mr. Mittleider, most of which have not resulted in a judicial determination, and properties other

than the properties addressed by the APA from which this litigation arises.  It is clear from the

way Trodale has plead these allegations that its purpose and intent is to harass Mr. Mittleider,

paint an unfairly unflattering picture of him to the Court and to create a basis for abusive

discovery.

Rule 12(f) authorizes the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous material." While it is true that motions to strike are viewed with disfavor, there are, of course, situations where the relief is just and appropriate. This is one of those cases.

A motion to strike should be granted where "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *HSH Norband AG v. RBS Holdings USA Inc.*, 2015 U.S. Dist. LEXIS 36087, *3 (S.D.N.Y. Mar. 23, 2015); *Low v. Robb*, 2012 U.S. Dist. LEXIS 6836, *24 (S.D.N.Y. Jan. 20, 2012). By Trodale's first paragraph, its purpose and motivation is unmistakable – it wants the Court to believe that because other litigants have made ugly accusations about Mr. Mittleider, the Court should draw initial impressions on the basis of those allegations rather than on the basis of the evidence actually admitted in this case.

Most of the recitation contained within the "Mittleider Litigation" section of the SAC deals with entities and properties other than the entities and properties that are subjects of the APA. For example, Trodale takes great pains to describe situations involving allegations of alter-ego liability and alleged discovery abuses involving other entities with which he is alleged to be associated. Especially disturbing and improper is Trodale's tactic of quoting at length the allegations made against Mr. Mittleider by other litigants in ongoing matters where there has been no disposition and offering its own characterizations of other litigants' allegations. The Trodale allegations should be stricken:

> Second Circuit caselaw makes it clear that references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or

> permissible findings of fact are, as a matter of law, immaterial under *Rule 12(f) of the Federal Rules of Civil Procedure.*

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)(collecting cases); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)(approving the striking of allegations concerning consent decrees because they were not products of adjudications on the merits and could not be used as substantive evidence of previous wrongdoing); *In re Trilegiant Corp, Inc.*, 11 F.Supp.3d 82, 130 (D. Conn. 2014);; *In re: Platinum and Palladium Commodities Litigation*, 828 F.Supp.2d 588, 592 (S.D.N.Y. 2011); *Dent v. United States Tennis Association*, 2008 U.S. Dist. LEXIS 46971, **5-6 (E.D.N.Y. June 17, 2008)(settlement agreements and consent decrees have served as targets of successful motions to strike).

The Trodale allegations do not further the actual causes of action asserted in the SAC and should be stricken. As written, the SAC does not contain a "short and plain statement." Given the number of allegations Trodale makes regarding matters having nothing to do with the APA, the motion to strike is important to ensure that Trodale does not attempt to leverage the SAC to make abusive discovery demands designed to delve into the particulars of other litigations in order to add substantial additional burdens to Mr. Mittleider and the Original Defendant Entities in this case.

## CONCLUSION

For all of the foregoing reasons, Defendants' Rule 12 motion addressed to the SAC as set forth herein should be granted.

Stamford, Connecticut
March 10, 2017

Respectfully submitted,

By:/s/Mark S. Gregory
    Mark S. Gregory (MG0914)
    Martin LLP
    262 Harbor Drive, 3rd Floor
    Stamford, Connecticut 06902
    Tel:  (203) 973-5210
    Fax:  (203) 973-5250
    E-Mail: mgregory@martinllp.net

    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017, a copy of the foregoing Memorandum of Law in Support of Defendants' Omnibus Federal Rule of Civil Procedure 12 Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF System.

By:/s/Mark S. Gregory
    Mark S. Gregory (MG0914)
    Martin LLP
    262 Harbor Drive, 3rd Floor
    Stamford, Connecticut 06902
    Tel:  (203) 973-5210
    Fax:  (203) 973-5250
    E-Mail:  mgregory@martinllp.net