UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:  

TRODALE HOLDINGS LLC,             :

                      Plaintiff,      :

                v.              :

BRISTOL HEALTHCARE INVESTORS, L.P.;  :
LYNCHBURG HEALTHCARE INVESTORS,  :
L.P.; DEMQUARTER HEALTHCARE        :
INVESTORS, L.P.; SALEM NURSING &      :
REHABILITATION CENTER OF REFORM,  :
INC.; DOUGLAS K. MITTLEIDER; H/P    :
CARRINGTON, INC.; LEGACY HEALTHCARE  :
CORPORATION, H/P CAMBRIDGE HOUSE,  :
INC.; FRANKLIN HEALTHCARE OF     :
PEABODY LLC d/b/a PEABODY         :
ASSOCIATES,                    :
                         :

              Defendants.   :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 29, 2017

16 Civ. 4254 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On February 6, 2014, Plaintiff Trodale Holdings LLC entered into an

Asset Purchase Agreement (the "APA") with Defendants Bristol Healthcare

Investors, L.P.; Lynchburg Healthcare Investors, L.P.; DemQuarter Healthcare

Investors, L.P.; and Salem Nursing & Rehabilitation Center of Reform, Inc.

(together, the "Sellers"), to purchase four nursing homes. After signing the

APA, Plaintiff discovered an undisclosed "materially adverse change" to one of

the nursing homes, as well as facts suggesting that the Sellers did not in fact

have the authority to enter into the APA. Rather than walk away from the

transaction, Plaintiff tendered a Notice of Default under the APA on April 21,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                      :

TRODALE HOLDINGS LLC,            :

                     Plaintiff,       :

                  v.              :

BRISTOL HEALTHCARE INVESTORS, L.P.;  :
LYNCHBURG HEALTHCARE INVESTORS,   :
L.P.; DEMQUARTER HEALTHCARE       :
INVESTORS, L.P.; SALEM NURSING &     :
REHABILITATION CENTER OF REFORM,   :
INC.; DOUGLAS K. MITTLEIDER; H/P     :
CARRINGTON, INC.; LEGACY HEALTHCARE :
CORPORATION, H/P CAMBRIDGE HOUSE,  :
INC.; FRANKLIN HEALTHCARE OF      :
PEABODY LLC d/b/a PEABODY        :
ASSOCIATES,                  :

                  Defendants.   :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 29, 2017

16 Civ. 4254 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On February 6, 2014, Plaintiff Trodale Holdings LLC entered into an

Asset Purchase Agreement (the "APA") with Defendants Bristol Healthcare

Investors, L.P.; Lynchburg Healthcare Investors, L.P.; DemQuarter Healthcare

Investors, L.P.; and Salem Nursing & Rehabilitation Center of Reform, Inc.

(together, the "Sellers"), to purchase four nursing homes.  After signing the

APA, Plaintiff discovered an undisclosed "materially adverse change" to one of

the nursing homes, as well as facts suggesting that the Sellers did not in fact

have the authority to enter into the APA.  Rather than walk away from the

transaction, Plaintiff tendered a Notice of Default under the APA on April 21,

2016, and filed this action against the Sellers and Yuba Aviv, LLC.[1]  Plaintiff

filed its First Amended Complaint on July 18, 2016, adding Douglas K.

Mittleider as a Defendant.  (Dkt. #17).  After abortive settlement efforts, Plaintiff

filed its Second Amended Complaint (or "SAC") on January 27, 2017, adding

H/P Carrington, Inc.; Legacy Healthcare Corporation; H/P Cambridge House,

Inc.; and Franklin Healthcare of Peabody LLC d/b/a Peabody Associates as

Defendants (together, the "New Defendants").  (Dkt. #58).[2]

The various defendants in this case have brought a series of motions

under Federal Rule of Civil Procedure 12.  The New Defendants move under

Rule 12(b)(2) to dismiss all claims against them for lack of personal

jurisdiction.  The Sellers, the New Defendants, and Mittleider (together,

"Defendants") move under Rule 12(b)(6) to dismiss certain of Plaintiff's claims

for failure to state a claim upon which relief can be granted.  Finally,

Defendants move under Rule 12(f) to strike certain allegations from the

---

[1]     Yuba Aviv, LLC ("Yuba Aviv") was named as a defendant in the Complaint and First
Amended Complaint.  (Dkt. #1, 17).  On July 22, 2016, Plaintiff filed a notice of
voluntary dismissal without prejudice under Federal Rule of Civil Procedure
41(a)(1)(A)(i) of its claim against Yuba Aviv.  (Dkt. #21).  When Plaintiff filed the SAC
(Dkt. #58), Plaintiff included Yuba Aviv in the case caption.  Plaintiff does not make any
mention of Yuba Aviv in the SAC beyond the case caption, and, beyond a passing
reference in Defendants' reply, the parties' briefing does not mention Yuba Aviv.  It does
not appear from any submission in connection with this motion that the parties believe
Plaintiff to have an extant claim against Yuba Aviv.  And even if Plaintiff did intend to
raise a claim, the SAC would not meet Rule 8's pleading requirements of providing fair
notice to Yuba Aviv.  *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 561 (2007).
Accordingly, the Court does not construe the SAC to plead any claim against Yuba Aviv
and does not consider Yuba Aviv in the resolution of the instant motion.

[2]     The SAC also named as a defendant Lafayette Lifeplans of Hiawatha, Inc.  Plaintiff
voluntarily dismissed its claims against this entity under Federal Rule of Civil
Procedure 41(a)(1)(A)(ii) on February 17, 2017.  (Dkt. #71).

pleadings.  For the reasons stated below, the motion under Rule 12(b)(2) is granted, the motion under Rule 12(b)(6) is granted in part and denied in part, and the motion under Rule 12(f) is denied.

**BACKGROUND**[3]

### A.     Factual Background

The SAC offers a veritable smorgasbord of salacious facts concerning Mittleider and the various healthcare and nursing home entities he controls. (*See generally* SAC ¶¶ 48-101).  Many of these allegations, however enticing, are not germane to the resolution of the limited jurisdictional and pleading questions at issue in the instant motions.  Accordingly, the Court will not engage in a full recitation of the facts alleged in the SAC and will recount below only what is relevant to the questions before it.

On February 6, 2014, Plaintiff and the Sellers entered into the APA and agreed that Plaintiff would purchase the following four nursing homes,

---

[3]     This Opinion draws principally on facts from the SAC (Dkt. #58).  The APA forms the basis of Plaintiff's claims and is appended to the SAC as an exhibit, and therefore the Court can consider the APA in resolving Defendants' motion.  *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (internal quotation marks and alteration omitted)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  For ease of reference, the Court refers to the Memorandum of Law in Support of Defendants' Omnibus Federal Rule of Civil Procedure 12 Motion (Dkt. #74), as "Def. Br.," to Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss (Dkt. #76), as "Pl. Opp.," and to the Reply Memorandum of Law in Further Support of Defendants' Omnibus Federal Rule of Civil Procedure 12 Motion (Dkt. #78), as "Def. Reply."

In deciding Defendants' motion under Federal Rule of Civil Procedure 12(b)(2), the Court considers, as it is permitted to do, the Declaration of Douglas K. Mittleider in Support of Defendants' Rule 12 Motion ("Mittleider Decl." (Dkt. #75)) and the Declaration of Jeffrey Fleischman ("Fleischman Decl." (Dkt. #77)).  *See Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

including the underlying real estate and assets: (i) The Cambridge House in Bristol, Tennessee; (ii) The Carrington in Lynchburg, Virginia; (iii) The Stratford House in Chattanooga, Tennessee; and (iv) Reform Nursing and Rehab in Reform, Alabama. (SAC ¶¶ 29-30). The Sellers also agreed to give Plaintiff the option of purchasing seven additional nursing homes: (i) Westview Manor of Peabody ("Westview") in Peabody, Kansas; (ii) College Hills Nursing and Rehabilitation in Wichita, Kansas; (iii) Maple Heights Nursing and Rehabilitation Center in Hiawatha, Kansas; (iv) Riverwood Healthcare and Rehab ("Riverwood") in Madisonville, Texas; (v) Timberlake Health and Rehabilitation Center in Jasper, Texas; (vi) Amara Health Care and Rehab in Augusta, Georgia; and (vii) Salem Nursing and Rehab Center of Tuskegee in Tuskegee, Alabama. (*Id.* at ¶ 31).

The various corporate defendants named in this action are alleged to be entities that own or operate certain of the nursing home facilities named in the APA as of the time the APA was executed: Defendant Bristol Healthcare Investors, L.P. ("Bristol") owns The Cambridge House; Defendant Lynchburg Healthcare Investors, L.P. ("Lynchburg") owns The Carrington; Defendant DemQuarter Healthcare Investors, L.P. ("DemQuarter") owns The Stratford House; and Defendant Salem Nursing & Rehabilitation Center of Reform, Inc. ("Salem-Reform") is affiliated with Reform Nursing and Rehab. (SAC ¶¶ 9-12). These four entities are each organized under the laws of the state of Georgia. (*Id.*). Plaintiff alleges further that Defendant H/P Carrington Inc. ("H/P

4

Carrington") is a Georgia corporation that operates The Carrington House and holds an option to purchase the property on which the facility is located. (*Id.* at ¶¶ 16-17). Defendant H/P Cambridge House Inc. ("H/P Cambridge House") is a Georgia corporation that allegedly operates The Cambridge House. (*Id.* at ¶¶ 17-18). Defendant Legacy Healthcare Corporation ("Legacy") was a Tennessee corporation with its principal place of business in Georgia, and was administratively dissolved in 2010. (*Id.* at ¶¶ 19-20). Plaintiff alleges that Legacy owns the Riverwood facility, as well as the underlying property, and, further, that Mittleider is Legacy's president and is "directly liable for its actions" following its dissolution. (*Id.* at ¶¶ 20-21). Defendant Franklin Healthcare of Peabody, LLC ("Franklin"), a Georgia limited liability company, is alleged to own the Westview facility and the underlying property. (*Id.* at ¶¶ 22-23). More broadly, Plaintiff alleges that Mittleider owns and controls all of the nursing home entities named in the SAC. (*Id.* at ¶ 28).

On February 6, 2014, the same day it entered into the APA with the Sellers, Plaintiff tendered an initial deposit of $100,000; it subsequently tendered an additional deposit of $1,000,000. (SAC ¶¶ 35-36). Plaintiff received a reimbursement of $800,000, but subsequently made another deposit of $100,000, such that there remains $400,000 of deposits held in escrow. (*Id.* at ¶¶ 37-38). At some point following the execution of the APA, Defendants are alleged to have "breached the APA by failing to disclose numerous, material

lawsuits and actions which directly affect the assets that are the subject of the APA." (*Id.* at ¶ 102). Specifically, Plaintiff alleges the following breaches:

> *First*, after entering into the APA, Plaintiff discovered that Defendants had sold College Hills Nursing and Rehabilitation, including its real estate and assets, to a third party without informing Plaintiff. (SAC ¶ 103).[4]

> *Second*, after signing the APA and after this lawsuit was filed, Mittleider caused Legacy to file a lawsuit in Texas "claiming that he had entered into a contract to sell the Riverwood facility … in violation of the APA." (SAC ¶ 104). Plaintiff was never informed of this fact; Mittleider had represented to Plaintiff that "[D]efendants would perform their obligations under the APA" and, in point of fact, Mittleider had had his counsel extend the APA's due diligence period "over 100 times, under this false pretense." (*Id.* at ¶ 105).

> *Third*, Plaintiff discovered that Amara Health Care and Rehab, Reform Nursing and Rehab, and Salem Nursing and Rehab Center of Tuskegee had each been "taken over by Court[-o]rdered receivers or health care ombudsman as the result of [D]efendants' gross mismanagement and improper litigation tactics." (SAC ¶ 106).

> *Fourth*, Plaintiff discovered that occupancy at The Cambridge House had dropped from 115 out of 130 beds to 80 out of 130 beds. (SAC ¶ 107).

---

[4] Throughout the SAC, Plaintiff refers to actions committed by "defendants" without defining that term. Presumably, Plaintiff intends this shorthand to refer to all of the Defendants named in this case. However, the SAC raises facts about three distinct groups of Defendants — the Sellers (which were parties to the APA), Mittleider (who signed the APA in a representative capacity on behalf of the Sellers), and the New Defendants (which were not parties to the APA). In recounting Plaintiff's allegations in this Opinion, the Court uses the term "Defendants" where Plaintiff has done so simply because it is not clear from the pleading which of these three groups is implicated in certain of the allegations, and the Court will not so speculate. That said, the Court's recounting of the facts — while necessarily taking all well-pleaded allegations as true — is not meant to ascribe responsibility for a particular action to a particular Defendant or group of Defendants.

*Fifth*, Plaintiff conducted a lien search and discovered "millions [of dollars] in judgments docketed against" certain nursing home facilities referenced in the APA and/or their operating entities. (SAC ¶ 108).

*Sixth*, Plaintiff alleges that Defendants defaulted on their obligation under § 4 of the APA to provide information such as "CPA audited financial statements" for 2010-13 to enable Plaintiff to conduct adequate due diligence. (SAC ¶ 109).

*Seventh*, Defendants did not disclose the existence of a *qui tam* action filed in the United States District Court for the Southern District of Mississippi against Mittleider and several entities he controls. (SAC ¶ 111).

*Eighth and finally*, Plaintiff was informed that The Carrington House would be sold to a third party, even though it was sold to Plaintiff in the APA. (SAC ¶ 112).

Plaintiff viewed these alleged breaches as "Material Adverse Changes," and, on April 21, 2016, tendered a Notice of Default. (SAC ¶¶ 110, 116). The APA provides that, in the event the Sellers default on the APA's terms, Plaintiff could elect to terminate the APA or specifically enforce it. (APA ¶ 12(a)). Plaintiff now seeks to do the latter.

## B. Procedural Background

Plaintiff initiated this action against the Sellers in New York State Supreme Court, Kings County, on May 2, 2016. (Dkt. #1). The Sellers removed this case to the Southern District of New York on June 8, 2016. (*Id.*). Following a settlement conference before Magistrate Judge Andrew J. Peck on September 9, 2016, this case was conditionally dismissed on September 30, 2016. (Dkt. #30). Thereafter, on October 2, 2016, Plaintiff moved to re-open the case (Dkt. #31), and Defendant filed a motion to enforce the settlement

(Dkt. #33).  On December 22, 2016, the Court denied Defendants' motion to enforce.  (Dkt. #45).

Plaintiff filed the SAC on January 27, 2017.  (Dkt. #58).  The parties appeared for a pre-motion conference with the Court on February 2, 2017, and Defendants filed the instant motion to dismiss on March 10, 2017.  (Dkt. #73).  On April 7, 2017, Plaintiff filed its memorandum of law in opposition to Defendants' motion (Dkt. #74), and this motion became fully briefed on April 21, 2017, when Defendants filed their reply in support of their motion to dismiss (Dkt. #78).

## DISCUSSION

Defendants' motion proceeds in three parts, relying on different subsections of Rule 12:  *First*, the New Defendants move under Rule 12(b)(2) to dismiss Plaintiff's claims against them for a lack of personal jurisdiction.  *Second*, Defendants move under Rule 12(b)(6): (i) to dismiss the First, Fourth, Sixth, Eighth, and Ninth Causes of Action in the SAC in their entirety as remedies that are improperly pled as causes of action; (ii) to dismiss the Second Cause of Action against Mittleider and the New Defendants; (iii) to dismiss the Third, Seventh, and Tenth Causes of Action in their entirety as duplicative of the breach-of-contract claim; and (iv) to dismiss the Fifth Cause of Action against the New Defendants.  *Third*, Defendants move under Rule

12(f) to strike certain allegations from the SAC. The Court addresses each of Defendants' motions in turn below.[5]

## A. The Court Grants the New Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### 1. Motions to Dismiss Under Rule 12(b)(2)

The plaintiff bears the burden under Rule 12(b)(2) of establishing that jurisdiction is proper. *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). In the absence of a "full-blown evidentiary hearing on the motion," a plaintiff can make a *prima facie* showing in support of jurisdiction "through its own affidavits and supporting materials," *id.*, which a court construes "in the light most favorable to [the] plaintiffs, resolving all doubts in their favor," *Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted).

Defendants argue, without citing any authority, that "[f]or purposes of a Rule 12(b)(2) motion, the Court is not obliged to deem [Plaintiff's] allegations to be true." (Def. Br. 8). This proposition is not entirely correct: While a court need not accept as true legal conclusions couched as factual allegations and ought not draw argumentative inferences in a plaintiff's favor, it must evaluate whether the jurisdictional allegations in Plaintiff's pleading and supporting affidavit could establish personal jurisdiction "if credited by the ultimate trier of

---

[5] The Court analyzes the APA under New York law. Neither side has addressed the choice-of-law issue but the Court observes that the APA contains an unambiguous choice-of-law provision that states that "[t]his agreement … shall be governed and controlled by the internal laws of the state of New York as to interpretation, enforcement, validity, construction, effect, and in all other respects." (APA ¶ 19).

fact." *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL,* 673 F.3d 50, 69 (2d Cir. 2012) (internal quotation marks and citation omitted).

As noted, this motion is brought only by the New Defendants. To determine whether the exercise of personal jurisdiction over them is proper, the Court looks first to whether the New Defendants are bound by the forum-selection clause in the APA. If so, the jurisdictional analysis ends there. *Export-Import Bank of U.S.* v. *Hi-Films S.A. de C.V.,* No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) ("Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process."). If, however, the forum-selection clause cannot be applied to the New Defendants, the Court looks next to whether jurisdiction can be obtained through operation of New York's long-arm statute and, finally, whether the exercise of jurisdiction would comport with constitutional principles of due process. *Grand River Enters. Six Nations, Ltd.* v. *Pryor,* 425 F.3d 158, 165 (2d Cir. 2005).

### 2. Analysis

None of the New Defendants is a New York corporation. H/P Carrington is alleged in the SAC to be a Georgia corporation with its principal place of business in Georgia that operates The Carrington, a nursing home located in Virginia. (SAC ¶¶ 10, 15-16). H/P Cambridge House is alleged to be a Georgia corporation with its principal place of business in Georgia that operates The Cambridge House, a nursing home located in Tennessee. (*Id.* at ¶¶ 9, 17-18).

Plaintiff alleges that Legacy was administratively dissolved in 2010 but that, prior to its dissolution, Legacy was a Tennessee corporation with its principal place of business in Georgia that owns Riverwood, a nursing home located in Texas. (*Id.* at ¶¶ 19-21). Finally, Franklin is alleged to be a Georgia limited liability company with its principal place of business in Georgia that owns Westview, a nursing home located in Kansas. (*Id.* at ¶¶ 22-23, 31). Moreover, as the parties agree, none of the New Defendants is a signatory to the APA. (APA, Ex. K; *see also* Pl. Opp. 9, Def Br. 11). The Carrington and The Cambridge House were two of the nursing homes to be sold under the APA (APA, Ex. A-1); Riverwood and Westview were two of the facilities for which Plaintiff received an option under the APA (*id.* at ¶ 16, *see also id.* at Ex. J).

Plaintiff argues that the exercise of personal jurisdiction over the New Defendants is nonetheless proper because each is subject to the forum-selection clause in the APA. (Pl. Opp. 7-15). In particular, Plaintiff argues that: (i) the forum-selection clause is "mandatory," such that all claims and parties under the APA are subject to jurisdiction in New York; (ii) the relationship between the New Defendants and the Sellers is sufficiently close that the non-signatory New Defendants can be bound to the forum-selection clause; (iii) the New Defendants are estopped from contesting the application of the forum-selection clause because they stand to benefit from the APA; and (iv) the New Defendants are bound under a veil-piercing or alter-ego theory. (*Id.*). The New Defendants vigorously contest the application of the forum-

11

selection clause because they are not signatories to the APA.[6]  (Def. Br. 10-14).

They further argue that (i) they are not assignees of any signatories; (ii) they are

not third-party beneficiaries of the APA; (iii) they are not alter egos of Mittleider

(who, himself, is not a signatory to the APA); and, (iv) finally, they are not so

"closely related" to the signatories as to warrant application of the forum-

selection clause to them.  (*Id.* at 11-14).

> ### a.  Personal Jurisdiction Does Not Extend to the New Defendants by Operation of the Forum-Selection Clause

The Court views the parties' arguments within the framework of the

Second Circuit's four-part test for enforcement of a forum-selection clause.

Under *Phillips* v. *Audio Active Ltd.*, a court first considers whether the clause

(i) was "reasonably communicated to the party resisting enforcement;" (ii) is

mandatory rather than permissive; (iii) and encompasses "the claims and

parties involved in the suit[.]"  494 F.3d 378, 383 (2d Cir. 2007).  If all three

prongs of this inquiry are met, the clause is presumptively enforceable.  *Id.*

Fourth, and finally, a court considers "whether the resisting party has rebutted

the presumption of enforceability by making a sufficiently strong showing that

enforcement would be unreasonable or unjust, or that the clause was invalid

for such reasons as fraud or overreaching."  *Id.* at 384-85 (internal quotation

marks omitted).

---

[6]    Defendants Bristol, Lynchburg, DemQuarter, and Salem-Reform (the Sellers) do not contest the application of the forum-selection clause.  (Def. Br. 11).  Defendant Mittleider also does not contest the exercise of personal jurisdiction over him.  (*Id.* at 13).

"[T]he fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. LLC* v. *Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Even so, upon consideration of the *Phillips* factors, the Court cannot find that the SAC and Plaintiff's supporting declaration plead sufficient facts that, if credited by the ultimate trier of fact, would support a finding of personal jurisdiction over the New Defendants.

### i. The Forum Selection Clause Was Not Reasonably Communicated to the New Defendants

"In general, awareness by a nonsignatory of a forum selection clause or of the contract in which such a clause is contained is enough to satisfy the first [*Phillips*] condition." *Overseas Ventures, LLC* v. *ROW Mgmt., Ltd., Inc.*, No. 12 Civ. 1033 (PAE), 2012 WL 5363782, at *4 (S.D.N.Y. Oct. 26, 2012). Even in the absence of actual awareness, a non-signatory can be bound if it is "closely related" to the signatory to the contract containing the clause. *Id.* Plaintiff argues that there is "no dispute" that the clause was adequately communicated because "Mr. Mittleider, the owner of all [Defendants], signed the APA which contained the venue clause, and admits in his affidavit to owning or controlling all of the defendants in one capacity or another." (Pl. Opp. 8). The analysis here is not as straightforward as Plaintiff suggests.

Plaintiff alleges, in effect, that the New Defendants were aware of the forum-selection clause because Mittleider signed the APA in a representative capacity on behalf of all Sellers, and, because he also controls the New

Defendants, knowledge can be imputed to those entities. (Pl. Opp. 13-14). The New Defendants object to Plaintiff's attempt to paint all of the corporate entities in this case as Mittleider's alter egos. (Def. Br. 13).

Courts have found that a forum-selection clause is reasonably communicated to a non-signatory corporate representative who negotiates or signs an agreement on behalf of a corporate entity. *E.g.*, *RedHawk Holdings Corp.* v. *Craig Invs., LLC*, No. 15 Civ. 9127 (CM), 2016 WL 6143355, at *5 (S.D.N.Y. Oct. 19, 2016) (enforcing a forum selection clause against corporate agent who negotiated agreement); *Kahala Corp.* v. *Holtzman*, No. 10 Civ. 4259 (DLC), 2010 WL 4942221, at *3 (S.D.N.Y. Dec. 3, 2010) (same against individual who personally guaranteed certain provisions of the agreement); *Firefly Equities LLC* v. *Ultimate Combustion Co., Inc.*, 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010) (same against corporate president who signed agreement). More to the present point, at least two courts in this District have found that a forum-selection clause is reasonably communicated to a non-signatory corporate entity where an individual who controls that entity signed the agreement on behalf of a signatory corporate entity. *KTV Media Int'l, Inc.* v. *Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011) (enforcing forum selection clause against non-signatory corporation where agreement was signed by individual who was the registered agent for both the non-signatory and signatory corporations); *Philippe N.Y.C. I LLC* v. *Philippe West Coast, LLC*, 14 Civ. 9858 (NRB), 2016 WL 1183669, at *7 (S.D.N.Y. Mar. 24, 2016)

14

(enforcing forum-selection clause where the agreement "was reasonably communicated to [non-signatory], and, therefore, the business entities he controls").

Both of those cases, however, are readily distinguishable from this one. In *KTV Media*, the non-signatory plaintiff's claims were derivative of and directly related to the conduct of a signatory entity, and the plaintiff had effectively conceded in its pleadings that it was part of the same corporate family as the signatory. On those facts, the court found the non-signatory was "closely-related" to the signatory and enforced the forum-selection clause against the plaintiff. *KTV Media Int'l, Inc.*, 812 F. Supp. 2d at 386-87. In *Philippe N.Y.C.*, the non-signatories were successors-in-interest to a signatory or were so intertwined with the business relationship at issue that the court found the parties to be "closely related" and, accordingly, enforced the clause against non-signatories. *Philippe N.Y.C.*, 2016 WL 1183669, at *8-9.

For reasons addressed in greater detail in the Court's discussion of the third *Phillips* prong, the New Defendants are not so "closely related" to the Sellers to warrant a finding that the forum-selection clause was reasonably communicated to them. While the SAC certainly supports a finding that the clause was reasonably communicated to Mittleider, it is a step too far for the Court to find that the SAC adequately pleads that the clause was reasonably communicated to the New Defendants. Even if the Court were to take that

step, this prong would militate only mildly in favor of enforcement of the forum-selection clause.

### ii.    The Forum-Selection Clause Is Mandatory

A court looks to the plain text of the clause to determine whether it is permissive or mandatory. *Overseas Ventures*, 2012 WL 5363782, at *4. In general, a permissive forum-selection clause is one that "designates a forum in advance, but does not preclude a different choice," while a mandatory forum-selection clause is one in which the parties "agree in advance on a forum that is exclusive of all others[.]" *Aguas Lenders*, 585 F.3d at 700. Only the latter is afforded a "presumption of enforceability." *Id.*

The APA provides in relevant part:

> Any dispute may be brought before any court having situs in New York County, New York. Each of the parties hereto hereby consents and submits to the jurisdiction of any local, state or federal courts located within said county and state. ... The parties hereto hereby waive any right they may have to transfer to change the venue of any litigation brought against such party in accordance with this section.

(APA ¶ 20(g)). The New Defendants unsurprisingly latch on to the "may be brought" language and argue that the clause is permissive. (Def. Reply 4). On its plain text, the forum-selection clause in the APA does appear to be permissive — it selects a forum in advance, but does not require that all suits be brought in New York. Plaintiff responds that this language, coupled with the parties' waiver of the right to change venue, renders the clause mandatory. (Pl. Opp. 8-9). The case law bears out Plaintiff's view on this score: The

16

Second Circuit has found that a facially permissive forum-selection clause "may nonetheless be mandatory where it combines permissive forum selection language with an express waiver of venue objections." *Akers Biosciences, Inc. v. Martin*, No. 14 Civ. 8241 (AJN), 2015 WL 1054971, at * 4 (S.D.N.Y. Mar. 10, 2015) (internal quotation marks omitted); *Aguas Lenders*, 585 F.3d at 700. The forum-selection clause in the APA is thus mandatory, and this factor weighs in favor of enforcement.

### iii. The New Defendants Are Not Subject to the Forum-Selection Clause

The third *Phillips* factor asks whether the claims *and* parties at issue are subject to the forum-selection clause. Neither side argues that any of Plaintiff's claims is not subject to the clause — indeed, all of Plaintiff's claims are related to the APA or the transaction surrounding it and, accordingly, appear to fall squarely within its ambit. The same cannot be said for all of the parties. It is well-settled that the fact that a party is a non-signatory to the agreement is not, alone, enough to resist enforcement of a forum-selection clause, *Aguas Lenders*, 585 F.3d at 701, and that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum[-]selection clauses," *RedHawk Holdings*, 2016 WL 6143355, at *4 (internal quotation marks and citation omitted). The question before the Court is whether the New Defendants are so "closely related" to the signatories to the APA that they may be found to be subject to the operation of its forum-selection clause.

17

Courts have found non-signatories to be "closely related" to a signatory where they are corporate officers of a signatory entity, *see Firefly Equities*, 736 F. Supp. 2d at 800; where they are corporate parents with a controlling interest in a signatory, *see Metro-Goldwyn-Mayer Studios Inc.* v. *Canal & Distribution S.A.S.*, No. 07 Civ. 2918 (DAB), 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010); and where the non-signatory was alleged to have acted in concert with the signatory, *see Weingrad* v. *Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5-6 (S.D.N.Y. Nov. 7, 2005). Courts have also found that a third-party beneficiary to a contract is necessarily "closely related" to the signatories. *Overseas Ventures*, 2012 WL 5363782, at *5. Finally, courts have found that a non-signatory is "'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Id.* (quoting *Weingrad*, 2005 WL 2990645, at *4).

Proceeding somewhat out of order, the Court concludes that the New Defendants are not third-party beneficiaries to the APA and cannot be bound to the forum-selection clause on that basis. For a party to be a third-party beneficiary to a contract under New York law, the parties must have intended to confer a benefit on the third party. *Bayerische Landesbank, N.Y. Branch* v. *Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012). There are no facts alleged in the SAC indicating that the parties to the APA intended to confer any benefit on the New Defendants. And, as the New Defendants correctly point out (*see* Def. Br. 12), a third-party beneficiary theory of contract enforcement

grants a third party a right to enforce the contract; it does not grant a cause of action against the third party. *See Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (citing *Fourth Ocean Putnam Corp.* v. *Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)). There is similarly no allegation that any of the New Defendants is a successor in interest or assignee of any of the Sellers sufficient to support a finding that the parties are "closely related." *Cf. Philippe N.Y.C.*, 2016 WL 1183669, at *8.

Nor can the Court find a close relationship under a veil-piercing or alter-ego theory, as Plaintiff asks this Court to do. (Pl. Br. 13-14). To pierce the corporate veil, a court must find that "[i] the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; [ii] such control has been used to commit a fraud or other wrong; and [iii] the fraud or wrong results in an unjust loss or injury to plaintiff." *Atateks Foreign Trade, Ltd.* v. *Private Label Sourcing, LLC*, 402 F. App'x 623, 625 (2d Cir. 2010) (summary order) (quoting *Freeman* v. *Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)). Plaintiff alleges, and Mittleider himself confirms, that he is the president of or otherwise affiliated with all of the corporate Defendants, both signatory and non-signatory entities. (SAC ¶ 28; Mittleider Decl. ¶ 2(a)-(h)). From here, however, Plaintiff's allegations devolve into the conclusory. Plaintiff asserts that "Mittleider essentially used each of the [nursing homes] as a personal piggy bank and transferred funds from one entity to another for his own personal benefit" (SAC

19

¶ 152), but there are no allegations of that activity as to any of the corporate Defendants in this case. Plaintiffs further allege that Mittleider owns all of the nursing homes at issue in the APA "and there is substantial overlap between its directors, officers, and [personnel]"; that all of the nursing homes "share an address, office space, telephone numbers, and Mittleider uses the same email address to conduct business for each facility"; and that "there is such unity of interest and ownership that the separate personalities of the [nursing homes] and Mittleider no longer exist." (*Id.* at ¶¶ 184-87). But the actual factual assertions mined from that claim, involving common corporate officers and office space, are but two of many factors considered to find the degree of control over a corporate entity needed to pierce the corporate veil. *Wm. Passalacqua Builders, Inc.* v. *Resnick Dev. South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (setting out ten factors to consider when assessing domination over a corporate entity).

Plaintiff spills considerable ink discussing Mittleider's "pattern of abusing the corporate form," and limning findings made by other courts piercing the corporate veil of certain Mittleider-controlled entities not at issue in this case. (SAC ¶¶ 1, 48-58). But the factual allegations and evidence that caused those courts to arrive at those conclusions find no analogues in this case. Indeed, the relevant allegations of facts (as distinguished from legal conclusions) are few. The SAC is devoid of any facts that funds were freely transferred between the New Defendants and Mittleider or the Sellers, or that these entities did not

20

deal at arm's length or were not treated as independent profit centers.  *See*

*Wm. Passalacqua Builders, Inc.*, 933 F.3d at 139.  While the facts alleged in the

SAC give the Court pause, they do not provide a basis, even when construed in

Plaintiff's favor, to find that the New Defendants — H/P Carrington, H/P

Cambridge House, Legacy, and Franklin — were so completely dominated by

Mittleider as to be his alter egos.  Plaintiff's argument would effectively bind

any entity associated with Mittleider to the APA's forum-selection clause, and

this result cannot stand.

Having found that Plaintiff's claims fail the first prong of the veil-piercing

test, the Court will not move to the remaining two prongs.  And having found

that the balance of the first three *Phillips* factors does not make the APA's

forum-selection clause presumptively enforceable, the Court will not engage the

fourth *Phillips* factor.  Instead, the Court will review whether personal

jurisdiction is proper under New York's long-arm statute and principles of

constitutional due process.

### b.  The Court Lacks General Jurisdiction Under New York Law as to the New Defendants

General jurisdiction under the New York Civil Practice Law and Rules

§ 301 is proper when "a company has engaged in such a continuous and

systematic course of 'doing business' in New York that a finding of its

'presence' in New York is warranted."  *Sonera Holding B.V.* v. *Cukurova Holding*

*A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (alterations omitted) (quoting *Landoil*

*Res. Corp.* v. *Alexander & Alexander Servs.*, 77 N.Y.2d 28, 33 (1990)); *cf. id.* at

225 n.2 ("[W]e note some tension between *Daimler*'s 'at home' requirement and New York's 'doing business' test."); *see generally Daimler AG* v. *Bauman*, 134 S. Ct. 746, 751 (2014) (concluding that court may only exercise general jurisdiction over non-domiciliary corporation where "the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State'" (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011))).

The New Defendants correctly argue that "[Plaintiff] does not allege that any of the New Defendant[s] [] has done any business in New York, let alone any business on a continuous, permanent, and substantial basis." (Def. Br. 15). Plaintiff's brief does not address the question of personal jurisdiction under New York law despite Plaintiff's burden to make a *prima facie* showing that jurisdiction is proper. Even construing the facts in the SAC in a light most favorable to the Plaintiff, the Court cannot find any basis for the exercise of general jurisdiction over any of the New Defendants.

### c. The Court Lacks Jurisdiction Over the New Defendants Under New York's Long-Arm Statute

New York's long-arm statute permits the exercise of personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1); *see also Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) ("To establish personal jurisdiction under section 302(a)(1) … [i] The defendant must have transacted business within the state;

22

and [ii] the claim asserted must arise from that business activity.").[7]  The New Defendants argue that the SAC simply does not plead any facts that support a finding that any of them conducted business within the state of New York or contracted to provide goods or services in the state.  (Def. Br. 16).  The Court agrees.  Plaintiff's pleading and supporting declaration do not contain any facts to establish a *prima facie* showing that the New Defendants have availed themselves of the New York forum.

Because there is no statutory basis for personal jurisdiction over the New Defendants, the Court need not reach the question of whether the exercise of jurisdiction comports with due process.  The record before the Court strongly suggests, however, that it would not.  Due process requires that the party over which jurisdiction is asserted have sufficient "minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Licci*, 732 F.3d at 169 (citation and alterations omitted).  Where a court finds that a party has minimum contacts with the forum state, the court looks next to "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; and [iii] the plaintiff's interest in obtaining convenient and effective relief."  *Id.* at 170 (citation and alteration omitted).

---

[7]      The long-arm statute also provides for personal jurisdiction over alleged tortfeasors in certain circumstances, but there is no allegation in the SAC that the New Defendants committed any tort in or affecting the state of New York.

Here, the SAC does not contain any facts showing that the New Defendants have any contacts with the state of New York. The New Defendants are organized under the laws of Georgia (H/P Carrington, H/P Cambridge House, and Franklin) and Tennessee (Legacy); they own or operate nursing homes in Virginia (H/P Carrington), Tennessee (H/P Cambridge House), Texas (Legacy), and Kansas (Franklin). (SAC ¶¶ 15-23, 30-31). At most, the SAC alleges that the New Defendants are associated, through their operation of nursing homes, with entities that signed a contract under New York law to sell nursing homes to a New York-based entity. This cannot suffice under a due process analysis. Accordingly, the New Defendants' motion to dismiss the SAC under Rule 12(b)(2) for a lack of personal jurisdiction is granted.

**B.     The Court Grants in Part and Denies in Part Defendants' Motion to Dismiss for Failure to State a Claim**

**1.     Motions to Dismiss Under Rule 12(b)(6)**

Defendants as a group have moved to dismiss certain claims in the SAC. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must show that its pleadings "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In weighing whether a plaintiff has met this burden, a court must "draw all reasonable inferences in [the plaintiff's] favor [and]

24

assume all well-pleaded factual allegations to be true[.]" *Faber* v. *Met. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The Court need not, however, accept as true conclusory allegations or legal conclusions phrased as factual allegations. *Id.*

To decide Defendants' motion under Rule 12(b)(6), the Court may consider the facts alleged in the SAC, any documents attached to it, and any documents incorporated by reference. *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that may be considered in resolving a motion pursuant to Fed. R. Civ. P. 12(b)(6)). In particular, the Court may consider the APA, as it forms the basis of Plaintiff's breach-of-contract claim. *Nirvana Int'l, Inc.* v. *ADT Sec. Servs., Inc.*, 525 F. App'x 12, 13 (2d Cir. 2013) (summary order) (citing *Interpharm, Inc.* v. *Wells Fargo Bank, N.A.*, 655 F.3d 136, 141 (2d Cir. 2011)).

### 2. Analysis

Because the Court granted the New Defendants' motion to dismiss under Rule 12(b)(2), it will not consider their portion of the motion under Rule 12(b)(6) to dismiss Plaintiff's claims for breach of contract and fraudulent concealment. The remaining Defendants in this action are the Sellers (Bristol, Lynchburg, DemQuarter, and Salem-Reform) and Mittleider. The Court will only consider the Rule 12(b)(6) motion as to these Defendants and will, for ease of reference, refer to them below as the "Remaining Defendants."

### a.  Remedies vs. Causes of Action

The Remaining Defendants move to dismiss several of Plaintiff's causes of action on the basis that they are not claims but remedies.  (Def. Br. 17-19).  The Court addresses the relevant causes of action in turn.

### i.  First Cause of Action: Specific Performance

The Remaining Defendants argue that specific performance is a remedy for a breach-of-contract claim and, thus, cannot lie as an independent cause of action.  (Def. Br. 17).  To be sure, specific performance can be a remedy on a breach-of-contract claim.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 357 ("[S]pecific performance of a contract duty will be granted in the discretion of the court against a party who has committed or is threatening to commit a breach of the duty.").  And at least one court in this District has held that specific performance cannot stand as its own cause of action separate from an underlying action for breach of contract.  *See Tierney* v. *Omnicom Grp. Inc.*, No. 06 Civ. 14302 (LTS), 2007 WL 2012412, at *10 (S.D.N.Y. July 11, 2007) ("Specific performance is a remedy, and a remedy itself cannot be a cause of action.").

The fact remains that New York courts routinely recognize actions for specific performance, particularly in disputes over real property.  *See, e.g.*, *Terex Corp.* v. *Bucyrus Int'l, Inc.*, 943 N.Y.S.2d 18, 21 (1st Dep't 2012) (reversing grant of summary judgment on claim for specific performance); *City Ownership* v. *Giambrone*, 772 N.Y.S.2d 870, 870-71 (2d Dep't 2004) (affirming

26

denial of summary judgment on cause of action for specific performance).  And the New York Court of Appeals has recognized that "[t]here is no inconsistency between an action for specific performance and an action for breach of contract, both being affirmance of the contract."  *Judnick Realty Corp.* v. *32 West 32nd Street Corp.*, 61 N.Y.2d 819, 823 (1984).  Accordingly, the Court makes no finding as to whether Plaintiff can prevail on this claim, but will permit it to proceed.  The Remaining Defendants' motion under Rule 12(b)(6) to dismiss the First Cause of Action is denied.

### ii. Fourth and Ninth Causes of Action: Declaratory Judgment

Plaintiff cannot sustain an independent cause of action for a declaratory judgment.  A declaratory judgment is a remedy, not a cause of action.  *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("A request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights.").  Plaintiff's opposition simply argues that Plaintiff is entitled to pursue a declaratory judgment where it has other viable claims.  (Pl. Opp. 19).  The Remaining Defendants contend a declaratory judgment is not an independent cause of action, and they are correct.  Their motion to dismiss the Fourth and Ninth Causes of Action is granted, but this ruling should not be construed as a finding that Plaintiff may not seek a declaratory judgment as a remedy for its surviving claims.

### iii.  Sixth Cause of Action: Permanent Injunction

It is well settled that an "injunction is a remedy, not a cause of action, and therefore can issue only on the basis of an independent claim for relief." *Pitcairn Props., Inc.* v. *LJL 33rd Street Assocs., LLC*, No. 11 Civ. 7318 (JSR), 2013 WL 705861, at *2 n.1 (S.D.N.Y. Feb. 21, 2013).  Plaintiff counters by reciting the test for when a permanent injunction may issue.  (Pl. Opp. 18).  This argument misses the point:  Even if Plaintiff were correct about the propriety of issuing a permanent injunction in this case as a remedy for the Remaining Defendants' alleged wrongs, Plaintiff has not pointed to any authority showing that an injunction is, itself, a cause of action.  The Remaining Defendants' motion to dismiss the Sixth Cause of Action is granted.  Again, the Court's ruling does not foreclose Plaintiff's ability to seek a permanent injunction as a remedy for its remaining claims.

### iv.  Eighth Cause of Action: Vendee's Lien

In its Eighth Cause of Action, Plaintiff seeks "return of the Deposits and any additional sums paid to [D]efendants in connection with the APA" and, toward that end, a vendee's lien on the "Property"[8] in the amount of $400,000.  (SAC ¶¶ 178-80).  The Remaining Defendants claim that "[a vendee lien] is not a cause of action" but cites no authority for this proposition.  (Def. Br. 19).  Like specific performance, a vendee's lien is recognized in New York as an

---

[8]     Plaintiff does not define the term "property" in its pleading.  "Property" is defined in the APA as the personal property, fixtures, land, buildings, structures, and other improvements of the nursing homes.  (APA ¶ 1(a)).

equitable remedy available to a purchaser of real property. 1 Robert F. Dolan and Joseph Rasch, N.Y. Law & Prac. of Real Prop. 23:61 (2d ed.); *In re 85-02 Queens Blvd. Assocs.*, 212 B.R. 451, 456 (Bankr. E.D.N.Y. 1997) ("[W]here the sale contract fails, absent fault of the purchaser, courts in New York will enforce in favor of the purchaser (vendee) a lien on the subject property to the extent of monies paid so that the purchaser 'may assert his rights in a court of equity to get out of the land what he paid on it.'" (citing *Elterman* v. *Hyman*, 192 N.Y. 113, 125 (1908))). Under New York law, a vendee's lien attaches to property "when a contract for sale of said property is executed, and the purchaser makes partial payment of the purchase price." *In re 85-02 Queens Blvd. Assocs.*, 212 B.R. at 456.

Here, Plaintiff seeks a judgment that its payment of deposits for the nursing home properties entitles it to a vendee's lien in the amount of its deposits. (SAC ¶¶ 178-80). And, again like specific performance, New York courts have traditionally recognized causes of action to impress a vendee's lien. *See, e.g.*, *Liselli* v. *Liselli*, 693 N.Y.S.2d 195, 196-97 (2d Dep't 1999) (reversing judgment for an equitable lien on real property); *Datlof* v. *Turketsky*, 489 N.Y.S.2d 353, 354-55 (2d Dep't 1985) (affirming order dismissing claim to impress an equitable lien on real property); *Renol Holding Corp.* v. *Goodman*, 5 N.Y.2d 882, 882 (1959) (affirming reversal of a judgment to impress a vendee's lien). The Court, once again, takes no position on whether Plaintiff can ultimately prevail on this claim, but will permit this claim to proceed. The

Remaining Defendants' motion to dismiss the Eighth Cause of Action under Rule 12(b)(6) is denied.

### b. Second Cause of Action: Breach of Contract

Mittleider alone moves to dismiss the Second Cause of Action for breach of contract, reasoning that (i) he is not a party to the APA and (ii) "[i]t is axiomatic that only parties to a contract can be liable for its breach under New York law." (Def. Br. 20). It is not disputed that Mittleider signed the APA in a representative capacity as the president of each of the Sellers. (*See* Pl. Opp. 19-23). And, indeed, it is the rule in New York that "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Lerner* v. *Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991) (quoting *Mencher* v. *Weiss*, 306 N.Y. 1, 4 (1953)). That said, a corporate representative who signs a contract may not benefit from this rule where there is fraud in the use of the corporate form. *See Hudson Venture Partners, L.P.* v. *Patriot Aviation Grp., Inc.*, No. 98 Civ. 4132 (DLC), 1999 WL 76803, at *6 (S.D.N.Y. Feb. 17, 1999).

Plaintiff urges the Court to pierce the corporate veil to impose individual liability on Mittleider under the APA. (Pl. Opp. 22-23). To review, under New York law, a court may pierce the corporate veil where it finds that "[i] the owner has exercised such control that the corporation has become a mere

instrumentality of the owner, which is the real actor; [ii] such control has been used to commit a fraud or other wrong; and [iii] the fraud or wrong results in an unjust loss or injury to plaintiff." *Atateks*, 402 F. App'x at 625 (quoting *Freeman* v. *Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)). But for substantially the same reasons identified in its consideration of the APA's forum-selection clause, the Court finds that the SAC does not plead facts sufficient to support a finding that the Sellers are so completely dominated by Mittleider to pierce the corporate veil. Plaintiff makes conclusory allegations that Mittleider uses the companies as a "personal piggy bank" (SAC ¶ 2), and directs the Court's attention to numerous other courts that have pierced the corporate veil of Mittleider-controlled entities (*id.* ¶¶ 50-58). But the facts of those cases are not before this Court, and the SAC does not explain why any of those findings compels a similar finding *in this case*. Indeed, what is alleged in this case does not suggest any comingling of funds, absence of corporate formalities and recordkeeping, or other indicia that Mittleider used the Sellers to fraudulently manipulate the corporate form. *See Wm. Passalacqua Builders, Inc.*, 933 F.2d at 139. There is, simply, nothing in the SAC to suggest that Mittleider improperly used the entities named as Defendants in this case illegitimately to shield himself from liability. Without pleading that suffices under Rule 8 to show that Mittleider intended to take on personal responsibility for the APA or abused the corporate form, the Court will not bind

him personally to the contract. Mittleider's motion to dismiss Plaintiff's cause of action for breach of contract is granted.

### c.  Purportedly Duplicative Causes of Action

The Remaining Defendants move to dismiss the Third, Seventh, and Tenth Causes of Action as, in effect, duplicative of other claims.

### i.  Third Cause of Action: Breach of Express Warranty

The Remaining Defendants argue that because the warranties identified in the SAC are in the APA, Plaintiff's claim for breach of express warranty must be dismissed as identical to, and thus duplicative of, its claim for breach of contract. (Def. Br. 21). Once again, the Remaining Defendants cite no authority for this proposition. Plaintiff counters that because the remedies for breach of contract and breach of express warranty are distinct, the two claims may stand together. (Pl. Opp. 15).

The Court is unaware of any rule under New York law that breach-of-contract and breach-of-express-warranty claims cannot stand together, and courts in this District have permitted the two to proceed together. *See, e.g.*, *Price* v. *L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2017 WL 4480887, at *4 (S.D.N.Y. Oct. 5, 2017) (permitting plaintiff to plead breach of contract in the alternative to breach of express warranty); *Trump Int'l Hotel & Tower* v. *Carrier Corp.*, 524 F. Supp. 2d 302, 313-14 (S.D.N.Y. 2007) (same). The Remaining Defendants attempt to distinguish *Trump International*, arguing that the case is inapposite because it involved the potential for different remedies for the

breach-of-contract and breach-of-express-warranty claims. (Def. Br. 21). This is unavailing because there is, similarly, such a possibility here. While Plaintiff may not recover for the same injury twice, *see Price*, 2017 WL 4480887, at *4, Plaintiff could recover consequential damages on the breach-of-contract claim, whereas, on the breach-of-express-warranty claim, the remedy is traditionally limited to the repair or replacement of the item for which the warranty was breached. *See Trump Int'l*, 524 F. Supp. 2d at 314; U.C.C. §§ 2-316, 2-719(1)(a). The Remaining Defendants' motion to dismiss the Third Cause of Action as duplicative is denied.

### ii.     Seventh Cause of Action: Indemnification

An action for contractual indemnification typically arises after a party entitled to indemnification under the contract's terms has been found liable in a third-party action, but such an action can also encompass claims between the contracting parties. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d 168, 177-78 (2d Cir. 2005) (noting that indemnity clauses can include claims between the parties to the contract or be limited to third party claims). Here, the indemnification clause of the APA defines the "losses" to be indemnified as "all claims, liabilities, losses, damages, demands and causes of action of any nature whatsoever … whether or not resulting from third-party claims," thereby covering claims between the parties. (APA ¶ 11). Plaintiff's breach-of-contract and fraudulent-concealment claims appear to fall within the contemplation of the APA's indemnification clause.

33

The Remaining Defendants protest that Plaintiff's claim for indemnification is, effectively, a request for damages — specifically, losses arising from "certain actions or omissions by defendants" — and attorney's fees, and is thus duplicative of the breach-of-contract claim. (SAC ¶ 175; Def. Br. 19). The Remaining Defendants cite no authority for this contention, but they are in fact correct.

"Where the parties to a contract agree to indemnify each other for losses incurred by a breach of contract, but those losses do not relate to liability to a third party, the characterization of indemnification is no more than an epithet for recovery for breach of contract." *Lehman XS Trust* v. *Greenpoint Mortg. Funding, Inc.*, Nos. 12 Civ. 7935, 12 Civ. 7942, 12 Civ. 7943 (ALC), 2017 WL 1293773, at *7 (S.D.N.Y. Mar. 29, 2017) (internal quotation marks omitted); *see also Bank of N.Y. Mellon* v. *WMC Mortg., LLC*, No. 12 Civ. 7096 (DLC), 2015 WL 4163343, at *4 (S.D.N.Y. July 10, 2015) (holding that breach and indemnification claims are duplicative where "both arise from the same set of facts … and the indemnification sought is identical"). Here, Plaintiff seeks indemnification under the APA for the very same conduct it alleges constitutes a breach of the APA, and Plaintiff seeks compensatory damages and attorney's fees for its breach-of-contract claim — the same relief it seeks on its indemnification claim. The Remaining Defendants' motion to dismiss Plaintiff's Seventh Cause of Action as duplicative of the breach-of-contract claim is granted.

### iii. Tenth Cause of Action: Estoppel

Plaintiff's Tenth Cause of Action for "estoppel" alleges that "Defendants made explicit promises and warrantees to [P]laintiff" on which "Plaintiff reasonabl[y] relied." (SAC ¶¶195-96). For this, Plaintiff states, Defendants ought to be "estopped from cancelling the APA or from claiming that they are unable to sell the assets that are the subject of the APA[.]" (*Id.* at ¶ 198). *See Cyberchron Corp.* v. *Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) ("In New York, promissory estoppel has three elements: a clear an unambiguous promise[,] a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance." (internal quotation marks and citation omitted)).

It is well-settled that a party asserting a breach-of-contract claim cannot also maintain an action for promissory estoppel where there is a valid agreement between the parties. *Hoeg Corp.* v. *Peebles Corp.*, 60 N.Y.S.3d 259, 262 (2d Dep't 2017); *O'Grady* v. *BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 504 (S.D.N.Y. 2015); *Gas Nat., Inc.* v. *Iberdrola, S.A.*, 33 F. Supp. 3d 373, 386 (S.D.N.Y. 2014). Plaintiff argues that its claim for promissory estoppel should stand as an alternative to the breach-of-contract claim. However, Defendants do not contest the validity of the contract between Plaintiff and the Sellers; accordingly, Plaintiff cannot prevail on a claim for promissory estoppel against the Sellers. That said, Mittleider is not a party to the APA. Plaintiff should be permitted, at this early stage in the litigation, to plead promissory

estoppel in the alternative as to Mittleider.  Plaintiff's claim for promissory

estoppel against Bristol, Lynchburg, DemQuarter, and Salem is dismissed, but

Plaintiff's claim for promissory estoppel against Mittleider survives.[9]

## C.    The Court Denies Defendants' Motion to Strike

### 1.    Motions to Strike Under Rule 12(f)

Finally, the Remaining Defendants move to strike Paragraphs 48 to 101

of the SAC, believing that Plaintiff seeks to "harass Mr. Mittleider, paint an

unfairly unflattering picture of him to the Court and to create a basis for

abusive discovery."  (Def. Br. 23).  Under Federal Rule of Civil Procedure 12(f), a

court "may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions

to strike are not to be granted "unless there is a strong reason for so doing."

*Nungesser* v. *Columbia Univ.*, No. 15 Civ. 3216 (GHW), 2017 WL 1102661, at *1

(S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted).  "In deciding

whether to strike a Rule 12(f) motion on the ground that the matter is

impertinent and immaterial, it is settled that the motion will be denied, unless

it can be shown that no evidence in support of the allegation would be

---

[9]    The Remaining Defendants also argue that the merger clause in the APA bars Plaintiff from bringing a claim for promissory estoppel based on promises or representations not contained in the APA.  Because Plaintiff's claim against the Sellers cannot succeed in the face of a valid contract, the Court need not assess whether the claim is also barred under the merger clause.  But as noted above, Mittleider is not a party to the APA and the Court will not extend the operation of the merger clause to Mittleider in his personal capacity, particularly for any alleged promises or representations made following the execution of the APA.  *See Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *9 (S.D.N.Y. Mar. 24, 2009) (noting that merger clauses do not preclude all promissory estoppel claims, including those based on alleged promises made after the agreement was entered).

admissible." *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Courts in this District have found that to prevail on a motion under Rule 12(f), the moving party must show that "[i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant." *Landesbank Baden-Württemberg* v. *RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

### 2. Analysis

The Remaining Defendants assert that the allegations in Paragraphs 48 to 101 of the SAC are not merely irrelevant, but also inflammatory. (Def. Br. 23). Plaintiff counters that these allegations regarding Mittleider's business dealings and other litigations are "directly relevant to the issues at hand" because (i) they are evidence of the web of business entities controlled by Mittleider and (ii) the "primary value" of the nursing homes at issue in the APA "is the licenses that they hold," to which the *qui tam* litigation discussion is thus directly relevant. (Pl. Opp. 25). Plaintiff also observes that this case will be resolved in a bench trial, and opines that this mode of resolution undercuts the Remaining Defendants' claim of prejudice. (*Id.*).

Striking portions of a pleading is a "drastic remedy" and so motions to strike under Rule 12(f) are generally disfavored. 5C Charles A. Wright *et al.*, FED. PRAC. & PROC. CIV. § 1380 (3d ed.); *Lipsky*, 551 F.2d at 893 ("And

ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."). To prevail on a motion to strike, the moving party must show that "no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893. As another Court in this District has explained:

> [T]here has arisen since the adoption of [Rule 12(f)] general judicial agreement, as reflected in the extensive case law on the subject that [motions to strike under Rule 12(f)] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.

*VNB Realty, Inc.* v. *Bank of Am. Corp.*, No. 11 Civ. 6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 13, 2013) (second alteration in original) (quoting 5C Charles A. Wright et al., FED. PRAC. & PROC. CIV. § 1382 (3d ed.)).

Plaintiff's allegations in Paragraphs 48 to 101 of the SAC do not, at this juncture, appear to be directly relevant to Plaintiff's claim, but the Court is mindful that "[e]videntiary questions … should especially be avoided at such a preliminary stage in the proceedings," and that "the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." *Lipsky*, 551 F.2d at 893. The Court is reluctant to find, at this early stage, that these allegations have no possible relation or

any logical connection to the misconduct alleged.  Accordingly, the Remaining Defendants' motion to strike is denied.[10]

## CONCLUSION

For the foregoing reasons, the motion of H/P Carrington Inc., H/P Cambridge House, Inc., Legacy Healthcare Corporation, and Franklin Healthcare of Peabody, LLC to dismiss the SAC in its entirety under Rule 12(b)(2) is GRANTED without prejudice, and the Clerk of Court is directed to terminate these parties from the case.

The motion of the Sellers and Mittleider under Rule 12(b)(6) to dismiss the Fourth, Sixth, Seventh, and Ninth Causes of Action is GRANTED.  The motion of the Sellers and Mittleider to dismiss the First, Third, and Eighth Causes of Action under Rule 12(b)(6) is DENIED.  The motion of the Sellers and Mittleider under Rule 12(b)(6) to dismiss the Tenth Cause of Action is GRANTED as to the Sellers and DENIED as to Mittleider.  The motion of Mittleider under Rule 12(b)(6) to dismiss the Second Cause of Action is

---

[10] Defendants cite *Lipsky* as supporting the proposition that "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." (Def Br. 24-25).  As Judge Cote explained in *VNB Realty*, this misreads *Lipsky*.  *Lipsky*, ultimately, was concerned that the plaintiff in that action — which alleged material misstatements in SEC filings — quoted alleged misstatements in other offering documents from an SEC complaint and not from the disputed offering documents themselves.  *VNB Realty*, 2013 WL 5179197, at *3-4.  *Lipsky* is easily confined to its facts and does not stand for a blanket rule that references to other pleadings should always be stricken under Rule 12(f).  *Id.* at *4.  The Court will not read *Lipsky* with the breadth Defendants desire, and will not, at this stage, find that Plaintiff may not make reference to other litigations regarding Mittleider's nursing home businesses.

GRANTED. The motion of the Sellers and Mittleider under Rule 12(f) to strike certain portions of the SAC is DENIED.

The Clerk of Court is directed to terminate the motions at docket entry 73.

The following claims remain active in this case:

(i) First Cause of Action for Specific Performance against the Sellers and Mittleider;

(ii) Second Cause of Action for Breach of Contract against the Sellers;

(iii) Third Cause of Action for Breach of Express Warranty against the Sellers and Mittleider;

(iv) Fifth Cause of Action for Fraudulent Concealment against the Sellers and Mittleider;

(v) Eighth Cause of Action for a Vendee's Lien against the Sellers and Mittleider;

(vi) Tenth Cause of Action for Promissory Estoppel against Mittleider.

The Court has limited this Opinion and Order to the motions made by the various Defendants, and any claim that was not the subject of a motion to dismiss survives. The Court's Opinion should not be construed as expressing a position on the viability of any claims raised by Plaintiff that Defendants did not move to dismiss. The parties are hereby ORDERED to submit a proposed Case Management Plan by **December 15, 2017**. The parties should

contemplate that the Court will not agree to extensions of discovery deadlines, once imposed, and should plan accordingly.

SO ORDERED.

Dated:     November 29, 2017
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge