Jeffrey Fleischmann, Esq. (JF-3172)
Law Office of Jeffrey Fleischmann PC
150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com
*Attorneys for Plaintiff Trodale Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TRODALE HOLDINGS LLC,                    Case No. 16-cv-04254-KPF

          Plaintiff,

     - against -

BRISTOL HEALTHCARE INVESTORS, L.P.,
LYNCHBURG HEALTHCARE INVESTORS, L.P.,
DEMQUARTER HEALTHCARE INVESTORS, L.P.,
SALEM NURSING & REHABILITATION CENTER OF
REFORM INC., YUBA AVIV, LLC, DOUGLAS K.
MITTLEIDER, H/P CARRINGTON INC., LEGACY
HEALTHCARE CORPORATION, H/P CAMBRIDGE
HOUSE, INC.,  FRANKLIN HEALTHCARE OF
PEABODY LLC d/b/a PEABODY ASSOCIATES, and
LAFAYETTE LIFEPLANS OF HIAWATHA, INC.,

          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'
<u>SECOND COUNTERCLAIM FOR FRAUD</u>**

Plaintiff Trodale Holdings LLC ("plaintiff" or "Trodale"), by its attorneys, respectfully submits this memorandum of law in support of its motion, made pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss defendants' second counterclaim[1] alleging fraud.

## PRELIMINARY STATEMENT

The second counterclaim alleging fraud should be dismissed for failure to state of claim upon which relief can be granted, as it is merely a repackaging of defendants' first counterclaim for breach of contract.  In addition to their failure adequately to plead the elements of fraud, defendants fail to allege any legal duty that is separate and apart of Trodale's contractual duty to perform under the Asset Purchase Agreement (the "APA") between the parties, or adequately to allege any special damages that are not recoverable under the contract.

The fraud claim is entirely based on the same facts alleged in connection with the contract claim, and defendants fail to allege any facts that are sufficiently distinct therefrom.  In essence, the entirety of defendants' fraud claim is the assertion that Trodale never intended to honor its obligations under the APA, which does not constitute or state a claim for fraud.  Moreover, defendants fail to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), as the circumstances constituting the alleged fraud are not sufficiently specified and the facts alleged do not create the requisite "strong inference" of fraud necessary to establish the element of scienter.

Where, as here, the party alleging fraud relies on nothing more than bare, unsupported conclusions and fails to establish that the claim is based on facts and circumstances that are wholly collateral to the contract, dismissal of the cause of action is mandated.

---

[1]     Although defendants denominate their fraud claim as the second "cause of action," it is actually a counterclaim.  As such, defendants' second cause of action will be referred to herein as the "second counterclaim."

## STATEMENT OF FACTS

### The Second Amended Complaint

The facts as alleged by plaintiff are fully set forth in the Second Amended Complaint (the "SAC") (Doc. 58).  The following is a summary of those facts.

This is an action for fraud, piercing the corporate veil and related relief against Douglas K. Mittleider ("Mittleider"), and for specific performance, a permanent injunction, and breach of contract against Mittleider and the defendant nursing homes, collectively referred to herein as the "Nursing Home Entities."  Mittleider is the principal of the Nursing Home Entities and a serial litigant who has been repeatedly sanctioned and admonished by Federal and State Courts throughout the United States for his fraudulent conduct, bad faith litigation tactics, violations of Court Orders, and pattern of abusing the corporate form to shift funds and assets from one entity to another in an effort to defraud creditors and escape liability for his debts.  Mittleider is also being sued in a Qui Tam Action, where the United States has intervened, for health care fraud and overbilling the United States in connection with dozens of health care facilities that he owns or controls. See SAC, ¶1.

Pursuant to an Asset Purchase Agreement (the "APA") between the Nursing Home Entities, as sellers, and Trodale, as purchaser, agreed that Trodale would purchase the four skilled nursing facilities along with their real estate and assets: (1) The Cambridge House ("Cambridge"), located at 250 Bellbrook Road, Bristol, TN 37620 and containing 130 beds, (2) The Carrington ("Carrington"), located at 2406 Atherholt Road, Lynchburg, VA 2450 and containing 96 beds, (3) The Stratford House ("Stratford"), located at 8249 Standifer Gap Road, Chattanooga, TN 3742 and containing 127 beds, and (4) Reform Nursing & Rehab ("Salem-

Reform"), located at 515 2nd Ave NW, Reform, AL 35481AL 35481 and containing 85 beds. See SAC, ¶31.

The APA also provided plaintiff Trodale with the option of purchasing several other facilities along with their real estate and assets.

In connection with the subject transaction, Mittleider made numerous misrepresentations and omissions of material fact including without limitation (i) intentionally concealing from plaintiff the sale of one of more of the facilities and its real estate and related assets to an outside third party, (ii) concealing the existence of insider contracts that were both illegal and financially damaging, (iii) concealing from plaintiff the existence of certain Court Ordered receiverships of facilities that were to be sold under the terms of the APA, (iv) concealing from plaintiff that some of the assets that were the subject of the APA were restricted from a sale by Court Order, (v) concealing from plaintiff that Mittleider essentially used each of the nursing home facilities as a personal piggy bank and transferred funds from one entity to another for his own personal benefit, and (vi) concealing the existence of a Qui Tam action, which among other things, alleges that the Medicare and Medicaid reimbursements made by the Nursing Home Entities are false or overstated, thereby calling into question the very viability of the Nursing Home Entities, and their ability to continue as a going concern.  See SAC, ¶2.

Mittleider concealed the foregoing notwithstanding Section 8 of the APA, which contains a representation that there exists no pending or threatened litigation, investigations, claims, lawsuits, governmental actions, or other proceedings involved the assets to be purchased pursuant to the APA.

**The Counterclaims[2]**

On December 15, 2017, defendants filed their Answer and Counterclaims (Doc. 81). There is no dispute respecting the parties' entry into the APA on or about February 6, 2014 for the sale and purchase of the Nursing Home Entities (which defendants denominate, "the Purchased Assets") for a purchase price of $30,600,000. Under the APA, Trodale was required to pay an earnest money deposit of $100,000, plus an additional earnest money deposit of $1,000,000. See Counterclaims, ¶¶ 2, 4-6.

The APA provided a due diligence period for the purchaser for the conduct of inspections, investigations, tests and studies of the various facilities, and did engage in such activities. See Counterclaims, ¶¶ 7-10. At Trodale's request, the APA was amended to permit extensions of the due diligence period. See Counterclaims, ¶¶ 15-17. However, the transaction did not close before the expiration of the final extension of the due diligence period. Thus, Trodale did not deliver the additional deposit or the full purchase price identified in the APA. See Counterclaims, ¶¶ 19, 20, 24. According to defendants, therefore, they terminated the APA and are entitled under the APA to retain the earnest money deposits made by Trodale. See Counterclaims, ¶¶ 25-26.

Based on the foregoing, defendants assert counterclaims for breach of contract (first counterclaim) and fraud (second counterclaim).

With respect to the second counterclaim, defendants allege that, with each request to extend the due diligence period, Berel Karniol ("Karniol"), on behalf of Trodale, "represented that Trodale was satisfied with the information it received from Sellers and about the subject skilled nursing home facilities." See Counterclaims, ¶ 31. According to defendants, with each

---

[2]   The allegations set forth in the counterclaims are accepted as true for the purpose of this motion only.

due diligence extension, Karniol, on behalf of Trodale, "represented that Trodale had a genuine interest in the Purchased assets and the wherewithal to complete the transactions…was making good faith efforts to secure appropriate financing and lease arrangement, but needed additional time…" See Counterclaims, ¶ 32.

According to defendants, such representations by Karniol were material, although they do not state how or why this is the case, and false because "Trodale did not have the present intentions or wherewithal to complete the transactions contemplated by the APA and was not engaged in good faith efforts to secure appropriate financing and lease arrangements. See Counterclaims, ¶¶ 33-35. However, the counterclaims fail to set forth any facts in support of these contentions.

According to defendants, they "relied on the representations made by Karniol" when agreeing to extend the due diligence period" and were damaged as a result because the Purchased Assets were "tied up by Trodale." See Counterclaims, ¶¶ 35-36. Again, however, they fail to specify the nature of such "reliance" or otherwise to identify any facts in support.

<div align="center">

**POINT I.**

**STANDARD OF REVIEW**

</div>

When considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept the allegations made by the non-moving party in its pleading as true and "draw all inferences in the light most favorable" to the non-moving party. In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95 (2d Cir. 2007). However, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009),

quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" sufficiently constitute a claim. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949, citing, Twombly, 550 U.S. at 555; 129 S. Ct. at 1965.

Pursuant to Iqbal and Twombly, a party must plead with such factual detail so as to sufficiently "nudge [its] claims . . . across the line from conceivable to plausible." Iqbal, 556 U.S. at 680, 129 S. Ct. at 1950-51. Thus, while a claim does not require the recitation of detailed factual allegations, it does require enough facts to state a claim to relief that is *prima facie* plausible. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Proper pleading demands more than "an unadorned, the-defendant-unlawfully-harmed me accusation," and the party must demonstrate "more than a sheer possibility" that the cause of action can be sustained. Id.

Federal Rules of Civil Procedure 9(b) sets forth the heightened standard for pleading common law fraud. In alleging fraud, "a party must state with particularity the circumstances constituting the fraud…" while "[m]alice, intent, knowledge, and other conditions in a person's mind may be alleged generally." See Fed. R. Civ. P. 9(b).

As described below, defendants neither satisfy the pleading standard established under Iqbal and Twombly nor the stringent requirements for pleading fraud under Fed. R. Civ. P. 9(b).

3 The Twombly decision abrogated Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957) and retired the oft-quoted line that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

<div align="center">

**POINT II.**

**THE SECOND COUNTERCLAIMS FAILS TO
STATE A CAUSE OF ACTION FOR FRAUD
AND, THEREFORE, SHOULD BE DISMISSED**

</div>

**A.  The Alleged Intent Not To Honor a Contract is Not Actionable As Fraud**

As stated previously herein, defendants assert that "Trodale did not have the present

intentions or wherewithal to complete the transactions contemplated by the APA and was not

engaged in good faith efforts to secure appropriate financing and lease arrangements. See

Counterclaims, ¶ 34.  However, as a matter of law, a contract claim cannot be converted into a

fraud claim merely based on "an allegation that the promisor intended not to perform when he

made the promise." Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1160 (S.D.N.Y.

1996), citing, Caniglia v. Chicago Tribune–New York News Syndicate, Inc., 204 A.D.2d 233,

234, 612 N.Y.S.2d 146, 147 (1st Dep't.1994); Guterman v. RGA Accessories, Inc., 196 A.D.2d

785, 786, 602 N.Y.S.2d 116, 117 (1st Dep't.1993)(the mere addition of allegations of scienter in

connection with a breach of contract claim does not give rise to a fraud claim); Gordon v. Dino

De Laurentiis Corp., 141 A.D.2d 435, 436, 529 N.Y.S.2d 777, 779 (1st Dep't.1988); Comtomark,

Inc. v. Satellite Communications Network, Inc., 116 A.D.2d 499, 500, 497 N.Y.S.2d 371, 372

(1st Dep't.1986); Spellman v. Columbia Manicure Mfg. Co., 111 A.D.2d 320, 323, 489 N.Y.S.2d

304, 307 (2d Dep't.1985); Chase v. United Hospital, 60 A.D.2d 558, 559, 400 N.Y.S.2d 343, 344

(1st Dep't.1977); PI, Inc. v. Quality Prods., Inc., 907 F.Supp. 752, 761 (S.D.N.Y.1995); Sudul v.

Computer Outsourcing Servs., 868 F.Supp. 59, 62 (S.D.N.Y.1994); Best Western Int'l, Inc. v.

CSI Int'l Corp., 1994 WL 465905, at *4 (S.D.N.Y. Aug. 23, 1994); cf. New York University v.

Continental Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283, 287, 662 N.E.2d 763, 767

<div align="center">

7

</div>

(1995) (general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support claim for fraud).

Where, as here, there is a contract claim, the plaintiff must allege (1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation that is collateral or extraneous to the contract; and (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages. Id at 1161, citing, Deerfield Comm. Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89-90 (1986); Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2d Cir.1996)(even intentionally-false statements indicating an intent to perform under the contract do not support an independent claim of fraud under New York law); Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir.1995)("cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing it"); Sudul v. Computer Outsourcing Services, 868 F. Supp. 59, 62 (S.D.N.Y. 1994)("where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract"); Kulas v. Adachi, KK, 1997 WL 256957, * 9 (S.D.N.Y. May 16, 1997) (allegation that defendant did not intend to honor the contract cannot transform a breach of contract claim into a fraud claim).

Fraud claims do not lie where they are based upon the same facts as the claim for breach of contract. As noted above, the fraud claims are premised upon the same facts as the contract based claim—in essence, that defendants did not intend to honor their obligations under the ACA. These non-collateral allegations are insufficient to state a claim for fraud. See Papa's-June

Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)(dismissing fraud claim where "[t]he complaint does not allege a fraud claim that is sufficiently distinct from the breach of contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract"); LCO Destiny, LLC v Michaels Stores, Inc., 543 F. Supp.2d 129, 133 (N.D.N.Y. 2008)("The promise underlying the fraud claim, as pled, is neither collateral nor extraneous to the terms of the alleged contract and, therefore, LCO can find no protection under the "collateral or extraneous" exception"); Town of Haverstraw v. Columbia Electric Corp., 237 F. Supp.2d 452, 456 (S.D.N.Y. 2002)(fraud claim not viable where the misrepresentation is merely the promise to perform under a contract).

The counterclaims nowhere allege that Trodale (or its representative) had a legal duty that was separate and apart from those established by the contract. They also fail to state any facts to the effect that there was any fraudulent representation which was extraneous or collateral to the contract. To the contrary, all purported misrepresentations (which are not sufficiently identified) were in the context of performing under the contract after it was entered.

The second counterclaim also fails to identify any special damages suffered by defendants that are not recoverable under the contract. Although defendants vaguely contend that the Purchased assets were "tied up by Trodale from February 2014 until…April, 2016," they nowhere specify any consequences suffered as a result. Moreover, they fail to explain why such purported damages would not be covered under the APA. To the contrary, the APA provides for the loss of Trodale's deposit if it failed to close in accordance with the APA.

In short, the fraud claim is nothing more than a repackaging of defendants' breach of contract claim, apparently as a means to obtain punitive, consequential damages or other

damages to which they would not be entitled even if they could establish Trodale's breach (and they cannot).

### B. The Fraud Claim Is Not Alleged With Sufficient Particularity

In any event, even if defendants could somehow conjure a fraud claim that is separate and distinct from their contract claim, and they cannot, the pleading still fails on its face.

The elements of a fraud claim under New York law are as follows: (i) a material misrepresentation or omission of a material fact; (ii) knowledge of the representation's falsity; (iii) an intent to defraud and induce reliance; (iv) justifiable reliance by the plaintiff; and (v) damages. Marino v. Coach, Inc., 264 F. Supp.3d 558 (S.D.N.Y. 2017); Unicredito Italiano SPA v. JP Morgan Chase Bank, 288 F. Supp.2d 485, 488 (S.D.N.Y. 2003).  Furthermore, as stated above, aside from pleading the general elements of fraud, Rule 9(b) places two (2) further burdens on the fraud plaintiff – the first goes to properly pleading the circumstances of the fraud and the second goes to the pleading of the fraud defendant's mental state.  See Loreley Financing (Jersey) v. Wells Fargo Securities, LLC, 797 F.3d 160, 171 (2d Cir. 2015).

### 1) The Circumstances of The Alleged Fraud Are Not Adequately Pled

With respect to the first prong of the analysis, to plead the circumstances of the fraud with particularity, the complaint must (1) specify and detail the statements (or omissions) that were fraudulent; (2) identify the speaker; (3) state when and where the statements were made; and (4) explain why the statements (or omissions) were fraudulent.  Loreley, 797 F.3d at 171; Marino v. Coach, Inc., 264 F. Supp.3d 558, 567 (S.D.N.Y. 2017); Utts v. Bristol-Meyers Squibb Co., 226 F. Supp.3d 166, 175 (S.D.N.Y. 2016).

Here, the counterclaims offer none of the requisite specifics.  Nowhere are the details of any purported statements by Trodale's representative specifically identified.  Also absent is a

statement of when, where and to whom such purported unspecified statements were made. General statements regarding "good faith efforts" being made by Trodale to secure financing or enforceable lease agreements do not constitute statements that are collateral to the contract or which induced reliance on the part of defendants.  If Trodale was unsuccessful in securing financing or leases, then there were cancellation rights under the APA for both parties.  Or, if either Trodale or defendants failed properly to engage in efforts required under the APA, then they would be subject to the provisions of the APA that articulate the parties' respective rights in the event of a breach.  Thus, it is not surprising that defendants fails sufficiently to articulate why Trodale's statements (whatever they may have been) were fraudulent.

### 2) Defendants Fail Adequately to Plead Intent To Defraud

With respect to the second prong of the analysis, the Second Circuit has held that fraud complaints must allege facts that lead to a "strong inference" that the party against whom the claim is asserted has the requisite state of mind.  See IKB Int'l S.A. v. Bank of Am. Corp., F. App'x 26, 27 (2d Cir. 2014)("We have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent"), quoting, O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 179 (2004)(when pleading scienter, parties "must allege facts that give rise to a strong inference of fraudulent intent").   A pleading can satisfy this requirement only by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  PetEdge, Inc. v. Garg, 234 F. Supp.3d 477, 494 (S.D.N.Y. 2017), quoting, S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leading Corp., 84 F.3d 629, 634 (2d Cir. 1996); Lerner v.

Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006), quoting, Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

None of the requisite indicia of Trodale's state of mind are alleged.  Vague statements that Trodale did not have the wherewithal or intent to complete the transactions are grossly insufficient.  No facts are alleged that would lead this Court to a "strong inference" that Trodale had the requisite state of mind directed toward defrauding defendants, either by direct or circumstantial evidence.

Where, as here, insufficient facts are pled to raise a strong inference of fraud, the cause of action must be dismissed for failure to comply with the requirements of Rule 9(b).  See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); Mills v. Polar Molecular Corporation, 12 F.3d 1170 (2d Cir. 1993) (complaint dismissed for lack of particularity).

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court dismiss the second counterclaim for fraud in its entirety, and that it grant such other and further relief as it deems just and proper.

Dated: January 24, 2018
      New York, New York                  Respectfully Submitted,

                                      LAW OFFICE OF JEFFREY FLEISCHMANN PC

                                      By: /s/Jeffrey Fleischmann
                                          Jeffrey Fleischmann, Esq.